## NEW-BOSTON *vs.* DUNBARTON.

Evidence that a place has for fifty years exercised all the privileges of a town, is proper to be submitted to the jury from which to infer that the place has been incorporated, although no charter can be found.

Where there is no direct evidence that a place has been incorporated, the inference from circumstantial evidence tending to prove that a charter has been granted, is to be made by the jury, and not by the court.

ASSUMPSIT, for the support of Nancy Town, a pauper, alleged to have a settlement in Dunbarton.

It was agreed that the said Nancy was a pauper, standing in need of relief; that the supplies were furnished, and that the plaintiff is entitled to recover the sum of $32.50, provided the pauper had a settlement in Dunbarton. It was conceded that she had a settlement in Dunbarton, derived from her father, unless she subsequently acquired a new settlement on her marriage with Moses Town. Her husband had no settlement in this State except through his maternal grandfather, Charles McCoy, who, before the year 1796, had a settlement in Allenstown, provided a settlement at that time could be gained in Allenstown so as to render that town liable for the support of paupers. The question whether a settlement could be gained in Allenstown before the year 1796, depended on the question whether that town were, or were not, incorporated prior to that time. If it were so incorporated, then the pauper has a settlement there, and the defendant is entitled to a verdict; but if it were not, then the settlement of the pauper is in Dunbarton, and the plaintiff is entitled to recover the sum of $32.50.

On this point, testimony was introduced by the defendant,

tending to prove that Allenstown was incorporated before the year 1796; and it was contended that a charter had been granted to Allenstown by the State, but that it was lost by time or accident. Evidence was offered that the records and papers of the town had been searched for the purpose of finding a charter, but that none could be found.

To show that there was once a charter, evidence was offered of various acts, which, it was contended, could have been done only by a town duly incorporated, and that these acts were known to the State, and that the State had in various ways recognized Allenstown as a town.

There was evidence that for some years prior to 1796, Allenstown had assessed and collected State, county and town taxes, a part of which was for the support of schools, and that paupers had been supported by them before that time; and that, from their first organization as a body, the usual officers of a town, such as selectmen, town-clerks, surveyors of highways, collectors, constables, tythingmen, &c. were annually chosen, qualified and acted, and that moneys were raised in the manner and for the purposes usual in towns.

Copies of various votes and proceedings in relation to Allenstown were also introduced, as tending to prove that she had been treated and recognized as a town by the State, as follows:

A list of the ratable estates of the several towns, as settled by the general assembly for a new proportion, including Allenstown. The list is dated on the 29th of May, 1773.

A vote in the house of representatives, dated on the 10th day of January, 1776, that the town of Allenstown, being taxed the last year the sum of £3 6s. 1d. more than their proportion with other towns in this colony, the said town be abated that sum.

The circular from the committee of safety for New-Hampshire, directed " to the selectmen of Allenstown," requesting them to obtain from their citizens signatures to a pledge of resistance to the British fleets and armies, which pledge was signed by twenty-one citizens.

A vote in the provincial congress of New-Hampshire, dated on the 17th day of November, 1775, fixing the number of repre-

New-Boston *v.* Dunbarton.

sentatives from the towns, and that Epsom and Allenstown should send one representative; also that precepts should be sent to the towns accordingly, &c.

A list of members returned to the provincial congress at Exeter, on the 21st day of December, 1775, from which it appeared that Chichester, Epsom and Allenstown were represented by John McClary, esq. It appeared also that Mr. McClary represented those towns at the session holden on the 4th day of June, 1777.

A petition by the selectmen of Allenstown, dated on the 9th day of June, 1788, to the general court, praying that equal justice might be done them with other towns, in proportioning the taxes, and stating that they had no representative.

A vote of the house of representatives, dated on the 16th day of June, 1786, on the petition of the selectmen of Allenstown, that the town be abated out of the extent against them, for the deficiency of a continental soldier, the sum of forty-two pounds.

To rebut this evidence, the plaintiff proved that prior to the year 1796, and since that time, discussions had been had in town meeting in Allenstown concerning the expediency of obtaining a charter, and that no charter had ever existed, in the knowledge of witnesses, until the year 1831, and that they had never heard it contended until recently that a charter had existed before that time. It also appeared that a petition, dated on the 8th day of March, 1831, and signed by certain citizens of Allenstown, was presented to the legislature, praying for an act of incorporation, and that a charter was granted accordingly, dated on the 2d day of July, 1831, incorporating all that tract of land situated in the county of Merrimack, known by the name of Allenstown, into a town by the name of Allenstown. It was proved that diligent search had been made among the State records, and no prior charter was to be found. Certain ancient deeds were produced, with evidence of possession under them, conveying tracts of land described as being within a *place* called Allenstown. Various acts of the legislature and of the provincial congress of this State were cited, to show that, from the facts proved by the defendant, such as the election of officers, raising money for the use of schools,

for the support of soldiers, or of the continental army, from the classification to choose representatives, and other acts relied on as tending to prove a charter, no inference of that kind could be made, because in all such respects the same powers had been exercised by towns and places without distinction, and the acts specified were equally required by law, and the burthens were equally imposed, whether the place were incorporated or unincorporated.

The evidence was submitted to the jury, who were instructed that if they believed that Allenstown was incorporated during the life of Charles McCoy, from whom Nancy Town derived her settlement, they should return their verdict for the defendant; otherwise for the plaintiff.

The jury found for the plaintiff, and the defendant moved that it be set aside, because, from the facts stated in the case, the inference in law was that Allenstown was incorporated, as the defendant alleged, and because the whole evidence raised a question for the consideration of the court, and was not to be determined by the jury.

*Farley*, for the defendant. There is no controversy about the acts and doings of Allenstown from 1771 to 1831, and these acts being proved, the inference from them is a question of law for the court. If a charter should be produced, the court must settle the question upon an examination of it. If no charter is produced, the court must say whether secondary evidence is receivable, and of this secondary evidence the court must judge. Upon an inspection of the record the court determine the question raised upon an issue of *nul tiel record,* and a charter is a matter of record. In such a case as this, the only question for the jury is, whether certain facts were proved; but the inference from those facts, when proved, should have been made by the court. It is more proper for the court to say what inference is to be made from the acts of the legislature in this case, than for the jury. The charter of 1831 is not competent to disprove the existence of a charter of earlier date. 1 *Stark. on Ev.* 78. Here is ample evidence, if the suit were against Allenstown, to estop the defendants from denying that they were a corporation.

New-Boston *v.* Dunbarton.

*C. H. Atherton*, for the plaintiff. Where secondary evidence is submitted to a jury, for the purpose of proving the existence of a record, their verdict is conclusive.

There is nothing here that shows that the legislature recognized Allenstown as a *town*. Unincorporated places may do certain things. They may choose officers, &c. but they cannot levy taxes. 4 *N. H. Rep.* 86, *Hillsborough* vs. *Deering.*

In this case, everything produced is a matter of record; nothing has been lost, and no trace of a charter is anywhere perceptible.

A recognition by the house of representatives only, is no grant, and cannot make a place a town.

GILCHRIST, J. The evidence in this case which is relied on to prove that Allenstown was incorporated before the year 1796, is circumstantial only, and the question before us is, whether the evidence is to be laid before the jury, with instructions that they should find whether a charter did or did not exist; or whether it is the duty of the court to make the inference from the facts proved, as a matter of law, as to the act of incorporation.

The jury may find, from the facts in a case, that a certain deed once existed, although there be no direct evidence of its execution. Where parties have occupied land, and have conducted precisely as they would have done if a deed had been made, it may be left to the jury to say whether a deed under which one of the parties claims, ever had an existence. This was settled after much deliberation in the case of *Downing* vs. *Pickering,* reported *infra.* We are not aware that it has ever been doubted, that the question as to the existence of a deed was to be settled by the jury from a consideration of the facts proved. In *Ley-field's Case,* 10 *Co.* 92, Lord *Coke* says, that " in great and notorious extremities, as by casualty of fire, that all his evidences were burnt in his house, there, if that should appear to the judges, they may, in favor of him who has so great a loss by fire, suffer him upon the general issue to prove the deed in evidence to the jury, by witnesses, that affliction be not added to affliction; and if the jury find it, though it be not showed forth in evidence, it

shall be good enough." In *Read* vs. *Brookman*, 3 *T. R.* 151, *Ashhurst*, J. says, that "if the deed be destroyed by any other accident, it falls within the same reason. And that brings it to a matter of fact before the jury, whether there be or be not sufficient evidence that the deed did exist." The jury may be directed to presume a deed "where it is necessary to clothe a rightful possession with a legal title, but the court must first see that there is nothing but the form of a conveyance wanting." *Keene* vs. *Deardon*, 8 *East* 248, *LeBlanc*, J. This pointed language shows that the circumstances proved in the case must be consistent with the existence of the deed.

We are not aware that a different doctrine has ever obtained, where the instrument whose existence is sought to be established is the charter of a public corporation. Where a town has acted as if a charter had been granted, the court cannot settle as a matter of law that a charter actually existed, any more than they can find as a matter of law the existence of a deed among private persons, from circumstances proved in the case. There is no distinction in the reason of the thing between the case of a deed and that of a charter. Both deeds and grants may be presumed from usage, where they are necessary to the completion of the party's title. *Ashhurst*, J., *Read* vs. *Brookman*, 3 *T. R.* 151. Under certain circumstances the jury may presume a grant from the crown. Lord *Ellenborough*, *Goodtitle* vs. *Baldwin*, 11 *East* 488. This is the same principle that governed Lord *Mansfield*, in *Lade* vs. *Holford*, *Bull. N. P.* 110, where he said that in all cases where trustees ought to convey to the beneficial owner, he would leave it to the jury to presume, where such a presumption might reasonably be made, that they had conveyed accordingly, in order to prevent a just title from being defeated by a matter of form. *Doe* vs. *Sybourn*, 7 *T. R.* 2. Whether a fact which is unknown, is to be presumed from its usual connection with other facts which are known, would seem to be properly in all cases a question for the jury; for the probability of the existence of the unknown fact depends upon the nature and strength of the facts and circumstances known, and the strength of the presumption is measured by the weight and credit given to the facts shown. A

New-Boston *v.* Dunbarton.

jury is the appropriate tribunal to weigh and appreciate such facts, and deduce inferences from them.   2 *Wend.* 59, *Schauber* vs. *Jackson.*

There are several cases to be found in the books where the question was similar to that now before us.   In *Dillingham* vs. *Snow,* 5 *Mass.* 547, the defendants, who were assessors of the north parish in *Harwich,* proved, by a resolve of the general court for that purpose, and by a certificate of the secretary of the commonwealth, that no act of incorporation could be found. They then showed the establishment of a separate parish in Harwich in 1746, and, by the records since kept of their meetings and proceedings, that the parish had taken successively and at different periods the names of " the first precinct in Harwich," " the precinct," " the parish," " the north parish," and " the north parish lying in Harwich and Brewster ;" and also that a certain line had existed for over forty years between the north and south parishes, and had been observed as such.   The court submitted the evidence to the jury, and said that the tax concerning which the suit arose, was legal, " if they were satisfied of the original establishment, and of the continuance of such a parish."   The supreme court held that as no act of incorporation could be found, the judge very properly permitted the defendants to prove a parish by reputation.   No question was made, and it was not suggested that upon proof of such facts the existence of such a charter was an inference of law to be made by the court.

In *Stockbridge* vs. *West Stockbridge,* 12 *Mass.* 400, the defendants had exercised all the privileges of a town for over thirty years ; had sent representatives, were assessed in all taxes, and in many acts and proceedings their existence as a town had been recognized by the legislature.   No charter of incorporation was to be found.   The question was submitted to the court whether this evidence were competent to prove that the town of West Stockbridge was ever incorporated ; and it was held that such secondary evidence was admissible.   But it was not suggested that the *court* could infer from the facts that a charter ever existed.

In the case of the *Mayor of Kingston* vs. *Horner, Cowp.* 102,

the question was whether, between the 5 *Rich*. 2, and the year 1441, the town of Kingston upon Hull had a charter from the king, creating and giving certain port duties to the corporation. For three hundred and fifty years subsequent to the year 1441 the duties had been exacted and submitted to without litigation. Lord *Mansfield* said he had taken it to be established in point of law, that though the record be not produced, nor any proof adduced of its being lost, yet under circumstances it may be left to the consideration of a jury, whether there is not sufficient ground to presume a charter. The evidence in this case was submitted to the jury. None of the eminent counsel in the case, among whom were Wallace and Dunning, suggested that the question was for the court.

In the present case, the evidence was submitted to the jury. Our opinion is, that it was properly submitted to them, and that there should be

*Judgment on the verdict.*