## CHAMBERLAIN *v.* ENFIELD.

When the question is as to the existence of certain vicious habits in a horse at a given time, the fact that the horse exhibited the same vices six or eight months after the time specified, may be competent evidence, in the discretion of the court, if accompanied with proper instructions as to its application.

It is a question of fact for the jury, whether a pile of lumber within the limits of a highway, but entirely out of the traveled track, by being liable to frighten horses or otherwise, is an incumbrance or obstruction within the meaning of the statute, or whether it has become such incumbrance by being continued there for an unreasonable length of time.

Although the public rights in a highway are paramount, yet the owner of the fee in the soil, subject to the public easement, may make such use of his land within the limits of the highway, for the placing of lumber, &c., as is, under all the circumstances of the case, reasonable and proper; and when thus used the lumber will not be an incumbrance.

In determining the question of a reasonable and proper use, by the owner of lands within the limits of the highway, but without the traveled track, whether evidence of the manner in which others have used it or were at the time using the same highway in that vicinity for similar purposes, would be competent, *quære?*

Where the question was, whether one J was making a reasonable and proper use of his land within the limits of a highway, in piling lumber there, and the plaintiff had introduced evidence that said J claimed a piece of land near by not in the highway, on which he might have piled it; it was competent for the defendant to show that a part of such land was claimed by another person, or that he claimed a right of way over it to a building of his own, as tending to rebut the plaintiff's evidence.

If the plaintiff's injury were caused by the negligent acts of a third person in the highway, that will not make the town liable unless the highway were defective, or in some way obstructed or incumbered.

It is now settled in this State, that where the cause of the accident and injury to the plaintiff is such that the town could not have had notice of it, or if notified, could not have removed or remedied the cause, or have prevented the accident, the town will not be liable.

Nor does it make any difference whether the accident was thus caused by act of Providence, or by the negligent or malicious act of man, or by a combination of these causes.

CASE, for damages done to the wife on a highway in said Enfield; writ dated August 30, 1859. It appeared that one George W. Johnson, in the early part of December, 1857, having purchased a shed, some little distance south of his dwelling-house, which he had agreed to remove that fall and was to use in the erection of a stable near his own house, and for his own use in the spring, took down and removed the same, and that he piled up the timber and lumber within the limits of the highway, opposite, or nearly opposite, his house, where it would be convenient for him to use in the spring; that said Johnson's dwelling-house was on the east side of the highway running through said Enfield and known as the Fourth N. H. Turnpike; that he piled up this timber and lumber on the west side of the highway; that the pile extended in length in all some 75 feet, the principal part of the pile being some 30 or 40 feet long. The plaintiff's evidence tended to show that this pile was about 6 feet high and 11 feet wide, while the defendant's evidence tended to show that it was only $3\frac{1}{2}$ or 4 feet high and only 6 feet wide. It was piled up close to the fence on that side of the road, and thus remained from the 10th day of December, 1857, to the 24th day of March, 1858. It appeared that the highway at this place was fifty-two feet wide between the fences, that the main traveled track was near the east side of the limits of the highway, and that the whole width of the road between the main traveled track and the pile of lumber on the west side of the way was smooth and free from obstructions, and in such condition that carriages or sleighs might be safely driven over it at any place.

In order to show that said Johnson had no occasion to lay this lumber in the highway, the plaintiff offered evidence tending to show that he claimed and occupied the land on both sides of the road where the lumber was piled, and that in the field on the west side of the highway there was room enough to have piled this lumber and much more, and that there was a passway leading from the highway into this field a little south of where the lumber was placed, &c.

The defendant offered evidence tending to show that this field next the highway was occupied as a garden by said Johnson, and that over a part of it another man claimed a right of way to a building situated back from the road on that side. The plaintiff objected to so much of the evidence as related to this claim of the right of way; but it was admitted, subject to exception.

On the 24th of March, 1858, said Johnson, in company with two other men, was engaged in overhauling this lumber and in selecting sticks suitable to construct a shed. Some three or four rafters, some 20 feet long, had been taken from the back side of the pile next the fence, and laid over upon the front side next the road, where one or two of them fell down upon the ground making considerable noise; just at this time the plaintiff, with a horse and wagon, who had come down in a cross road from the west, was turning round toward the south from said cross road into said fourth N. H. Turnpike, and when 67 feet north of the north end of said pile of lumber, the horse took fright at the sound or sight of the

falling timber, and turned suddenly around toward the northeast, cramped the wagon, tipped it over, and threw the plaintiff out upon the ground and injured her, which is the damage complained of. There was no controversy but that the highway, at the point where the injury was received, was smooth, well wrought, and free from any defect, incumbrance, or obstruction.

It was claimed by the defendant that the horse which the plaintiff was driving at the time of the accident was skittish, and evidence upon that point was introduced by both sides. The defendant offered evidence tending to show acts of skittishness which occurred in the fall of 1858, several months after the accident to which the plaintiff objected, and it was admitted subject to exception. After this the plaintiff also, without objection, introduced evidence tending to show that the horse at various times after the accident, and so down to the time of trial, was free from any such vice. The court instructed the jury that the fact as to whether the horse was skittish or not after the time of the accident, was immaterial, except so far as the facts and circumstances stated tended to show the horse's true character at the time of the accident; and that in that view, and that alone, they might consider all the evidence, and find whether or not the horse was skittish at the time of the accident.

The court instructed the jury that this pile of lumber might be an incumbrance within the meaning of the statute, although entirely out of the traveled track, and not upon any part of the road bed; that it might be such incumbrance in and of itself, or if not so, that it might become such by being continued for an unreasonable length of time; that it might be an incumbrance in consequence of its being calculated and likely to frighten horses, and that if it had not been or become such before the 24th of March, in any of these ways, that it might then have become such by the use that was then made of it in the highway, and that if, on that day, and at the time of the accident, in consequence of such use it became an incumbrance by being likely to frighten horses or otherwise, and the plaintiff's horse was frightened at it, the plaintiff being in no fault, she would be entitled to recover of the town; that the question as to whether the timber and lumber was an incumbrance or not was a question of fact for the jury to settle; that the first and principal use of a highway belongs to the public; that the public safety and convenience are to be first regarded; that the public rights are paramount, but that individuals, owning the fee in the land subject to the public easement, might properly use the land in such a way as not to interfere improperly with such public rights and convenience; and that if the owner of the land in this case was making such use of his land, within the limits of the highway, both in placing and continuing the lumber there, and, also, in the use which he was making of it at the time of the accident, as was reasonable and proper under all the circumstances of the case, then it would not be an incumbrance, but otherwise it would be; and that in determining whether such use was reasonable and proper, they might consider the paramount rights of the public in the highway;

and, also, what occasion, need, or necessity the owner of the land had for such use of the land; and, also, that they might consider the manner in which this highway in that vicinity had ordinarily been used by others, and the way in which it was then generally being used by others in that neighborhood, so far as there was any evidence on that point, for the piling of lumber and other materials within its limits, but without the traveled track, as tending to show whether Johnson made a reasonable and proper use of the highway; that such evidence of usage would not be conclusive, and might be of very little account, because they might find that all the people in the neighborhood had been, and were in the habit of using this highway for improper purposes and in an unreasonable way; but that it was a circumstance which they might consider with all the others in the case, and give it such weight as they thought it deserved.

These last instructions were given in consequence of the discussions of counsel upon that point, in the course of the trial; but no evidence was introduced by either side tending to show the usage or acts of other persons in reference to piling or placing lumber or other materials within the limits of the highway in question.

The plaintiff asked the court to substitute the word "necessary" for "reasonable," in their instructions as to the use of the land by the owner, so that the jury should be directed to inquire whether such use was necessary and proper, instead of whether it was reasonable and proper, which the court declined to do. The plaintiff also asked the court to instruct the jury, that if the plaintiff, not otherwise in fault, was driving a skittish horse which would go along safely, in an unincumbered highway, and the town suffered a pile of lumber to remain within the limits of the highway from the 10th of December, 1857, to the 24th of March, 1858, which was likely to frighten horses, and which did, either of itself or by the manner in which it was handled or used, frighten the horse in question, the town would be liable for the damage; also, that although it might have been reasonable and proper to use the highway to place the lumber in, as it was placed, and to use it to overhaul the lumber in, as Johnson did, still if the lumber fell down in consequence of any negligence of those who were handling it over, and the fall was calculated to frighten horses, the jury would be justified in finding that the highway was incumbered; also, that if the lumber in this case was placed within the limits of the highway in the fall of 1857, and remained there till the 24th of March, 1858, and was well calculated and likely to frighten horses, it was an incumbrance or obstruction within the meaning of the statute, and the town was guilty of negligence in not having it removed, although it was entirely out of the traveled path and not upon any part of the road-bed; all which the court declined to do, and the plaintiff excepted; the plaintiff also excepted to so much of the charge as instructed the jury to consider the manner in which the land in the limits of the highway in the neighborhood had been used and was then being used by others, in determining whether Johnson was making such use of it as was reasonable and proper, &c.

A verdict having been returned for the defendant, the plaintiff moved to set the same aside. And the questions of law were reserved.

*Weeks*, and *C. W. & E. D. Rand*, for the plaintiff.

*Murray*, and *Hibbard*, for the defendant.

SARGENT, J. It is objected that the evidence in relation to the right of way over the land in question, offered by the plaintiff, was improperly admitted. The defendant's position was that Johnson made a reasonable and proper use of his land by the side of the highway. To meet this the plaintiff introduced evidence, without objection, that Johnson claimed other lands near by on which he might have placed his lumber without using the highway. In reply, the defendant showed that another man made claim to a part of this land, for a way to his building.

Now it might have been a very good reason why Johnson should not entirely block up this passage way by piling his lumber there, that the title was in dispute, and that another man claimed the right to use it as a way. The evidence on both sides was only of claim and occupancy. No title deeds were introduced on either side, and for aught that appears the claim of the other man was as good and valid as Johnson's; and the evidence was properly admitted to rebut that introduced by the plaintiff.

The evidence of the skittishness of the plaintiff's horse after the accident, was, also, properly admitted, under the circumstances of the case, and with the instructions given to the jury in connection with it. The time alluded to in the evidence was only some six or eight months after the accident, and it may be safely laid down as a general rule (having its exceptions no doubt), that neither horses nor men entirely change their characters, their habits, or their manners, in that space of time.

The evidence in regard to the habits of the horse is not necessarily confined to the precise time in question, any more than it would be if the question were in regard to the value of the same horse at a given time; in which case, evidence of the price paid for similar horses, both before and after, may be competent; and so whether such sales were at the place in question or in some other place in the vicinity. *Cross* v. *Wilkins*, 43 N. H. 332, and cases cited; *Dewey* v. *Williams*, 43 N. H. 384. It was clearly within the discretion of the court at the trial to admit this evidence.

It is also objected, that the instructions to the jury, that if Johnson was at the time making such use of the road as was reasonable and proper, under all the circumstances, it would be no obstruction, in the meaning of the statute, were erroneous, and that the word "necessary" should have been substituted for "reasonable." It is claimed that the decision in *Winship* v. *Enfield*, establishes the rule as claimed by the plaintiff. But we do not so understand that decision. In that case the court were requested to instruct the jury, "that if the use of the road thus made by the owner of the wood

was necessary and proper, under all the circumstances, the town was not liable even though the jury should find that the horse was frightened at the wood, unless some other defect in the road for which the town was chargeable conduced to the accident." The court declined to give the instruction, and the refusal was held to be erroneous. This was the only point raised or decided upon that part of the case. The question whether, if the use had been reasonable and proper, it would be justifiable, did not arise and was not decided. In fact, in making our examinations in that case we became convinced that the rule, upon the authorities, should properly be as given in the instructions in the case at bar.

In *Graves* v. *Shattuck*, 35 N. H. 265, the court say that highways may be used for other purposes than the public travel, provided such use is not inconsistent with the reasonably free passage of whoever has occasion to travel upon them. And again, the plaintiff was guilty of no nuisance in moving his building through the streets of Nashua provided he selected suitable streets, used proper expedition, and was in the reasonable use of such streets, &c.

In *Attorney General* v. *Gas Consumers' Co.*, 19 E. L. & E. 639, the Lord Chancellor, in delivering the opinion, remarked, "If I were to station a cart in the street opposite my door, obstructing my door, obstructing the public highway, I might be guilty of a nuisance, for aught I know, and I might be liable to be indicted; but it would be a sufficient answer to say, that the cart was there only a reasonable time and for a lawful purpose." And after enumerating other examples, he says, "All these cases of nuisance or no nuisance, arising from particular acts, must, from the nature of things, be governed by particular circumstances. You must be guided by particular circumstances; you must look at the particular place or object the parties have in view. I take it that all these questions are of this nature: Are you using the subject matter of injury in a reasonable way, and are these the uses for which it was contemplated?"

In *Commonwealth* v. *Passmore*, 1 Serg. & Raw. 219, which was an indictment for a nuisance in placing goods in the street, and suffering them to remain there for the purposes of sale, the court say, "It is true that necessity justifies actions which would otherwise be nuisances. It is true, also, that this necessity need not be absolute; it is enough that it is reasonable. No man has a right to throw wood or stones into the street at his pleasure; but inasmuch as fuel is necessary, a man may throw wood into the street for the purpose of having it carried to his house, and it may lay there a reasonable time. So, because building is necessary, stone, bricks, lime, sand, and other materials, may be placed in the street, provided it be done in the most convenient manner. On the same principle, a merchant may have his goods placed in the street, for the purpose of removing them to his store in a reasonable time; but he has no right to keep them in the street for the purpose of selling them there, because there is no necessity for it." Or, in other words, such use would be unreasonable.

Now, if the rule in the case at bar had been laid down as requested

by the plaintiff, it would have been the duty of the court to have explained the sense in which the word "necessary" was used, as was done in the case last cited; to wit, not an absolute, but a reasonable necessity; and this would in no way have differed in effect and substance from the instructions that were given, that the use must be reasonable and proper; and in considering whether it were so or not, the jury must consider "what occasion, need, or necessity, the owner of the land had for such use of the land."

So in *Underwood* v. *Carney*, 1 Cush. 292, the court said, "The defendants have a right to make a reasonable use of the way adjoining their land." *Olinda* v. *Lothrop*, 21 Pick. 292.

Several of the cases above cited contain dicta which go to the full extent of the instructions given in this case in relation to the general usage of this way by others being competent evidence upon the question of reasonable use. But we think the doctrine has never been carried to that extent in this State, and we doubt whether evidence of that kind would have been competent if offered. But it appears that no evidence of this kind was introduced or offered, and therefore the question does not arise here.

The instructions asked for, that if the plaintiff, not otherwise in fault, was driving a skittish horse which would go along safely in an unincumbered highway, and the town suffered a pile of lumber to remain within the limits of the highway, &c., was only, in other words, asking the court to say what should constitute an incumbrance. The jury have found either that the plaintiff was in fault, or that the way was in all respects unincumbered, under the instructions given. So in the last instructions requested, it was simply asking the court to define and decide that a given state of facts would constitute an incumbrance in the highway. But the court had already instructed the jury that it was a question of fact for them to settle, whether the road was incumbered or not; and these instructions were proper. *Johnson* v. *Haverhill*, 35 N. H. 74; *Hubbard* v. *Concord*, 35 N. H. 65; *Carleton* v. *Bath*, 22 N. H. 559; *Graves* v. *Shattuck*, 35 N. H. 258.

The court was requested to instruct the jury, that "although it might have been reasonable and proper to use the highway to place the lumber in, as it was placed, and to use it to overhaul the lumber in, as Johnson did, still if the lumber fell down in consequence of any negligence of those who were handling it over, and the fall was calculated to frighten horses, the jury would be justified in finding that the highway was incumbered."

The court had instructed the jury, that if on that day, and at the time of the accident, in consequence of such use as was made of it, the lumber became an incumbrance by being likely to frighten horses, or otherwise, &c., the town would be liable. Now the instructions given covered all the ground of those desired, and more; whether the use was rightful or wrongful, careful or negligent, whatever may have been its character, still, if in consequence of the use that was then being made of it, the lumber became an incumbrance in any way, and the plaintiff's horse was frightened at it, &c., the town would be liable.

The case abundantly shows that the lumber fell down in consequence of the use that was then being made of it, whether that use was negligent or otherwise. The word use, in its ordinary and legal signification, includes the wrongful and negligent using or enjoying a thing, as well as the opposite. See remarks under the maxim *sic utere tuo,* &c. Broom's Leg. Max. 160.

If these men by their negligence have caused the plaintiff an injury, they may be liable to him, whether they were in the highway or out of it; but if the highway was in no way incumbered or obstructed, the town would not be be liable for their negligence.

The only objection to the instructions as given is, that they were too favorable to the plaintiff. The instructions given would make the town liable, provided the lumber, not being a nuisance before, had become so by the use that was being made of it at the time of the accident, in which case the town could not probably have known of its existence; or, if they had known of it, could not have prevented it, or removed it in season to have prevented the accident, and were in no fault whatever for its existence or continuance.

But it is now settled, that when the immediate cause of the accident and injury to the plaintiff is such that the town could not have had notice of it, or could not have prevented or remedied it before the accident, it can not be held liable; and that it makes no difference whether the injury was thus caused by the act of Providence, by inevitable accident, or by the negligent or malicious act of man, or by all these combined. *Palmer* v. *Portsmouth*, 43 N. H. 265. But the plaintiff can not object that the ruling was too strongly in his favor.

*Judgment on the verdict.*