### Stone *v.* Danbury.

A town will not be required to pay a bounty under our State law, either to three years men, or to nine months men, after their requisite quotas are full, nor to any officer or soldier who shall not in good faith contract to perform the service incident to his rank or station.

Whether the enlistment and mustering of the plaintiff into the service of the United States, as assistant surgeon, was colorable or genuine in this instance, so as to entitle him to a bounty from the defendant town, or otherwise, is a question for the jury to settle under all the evidence of the case. In the absence of higher record testimony to be obtained from the officer's commission or the army rolls, verbal testimony as to the character and extent of the actual service may be received by the jury.

That the plaintiff was found qualified for the office of assistant surgeon should not of itself furnish a sufficient reason why he should not be entitled to receive the town bounty.

Assumpsit, upon an account annexed to the writ for services as a physician, also for not paying the plaintiff the sum of $200, claimed by him as a bounty voted by the town for volunteers. Writ dated April 18, 1863. The defendants having made a confession of a portion of the items of the account, and filed the general issue as to the residue of the plaintiff's claim, the parties agree, for the purposes of this case only, upon the following statement of facts :

That, at a legal town meeting duly called and held on the 12th day of August, 1862, the town of Danbury, pursuant to an article in the warrant calling the same, *voted*, " that the selectmen be instructed to borrow five thousand dollars, on the credit of the town, and appropriate so much of the same as may be necessary to pay a bounty of two hundred dollars each for the number of the quota of the town for volunteers called for * * * * * * * * * * and that when this meeting adjourns, it adjourn to meet the first Saturday of September." On the first Saturday of September met according to adjournment and "voted to pay the overplus of those (then) enlisted for three years the sum of two hundred dollars." " *Voted* to pay the nine months men one hundred dollars each." Adjourned to September 11th, 1862, at which time the town "*voted* to pay one hundred dollars in addition to the one hundred dollars previously voted for nine months men, provided they are called into the service of the United States out of the State."

At the first adjourned meeting in September, when the case of one James T. Smith was before the meeting, a motion was made that the vote of the town offering two hundred dollars bounty for volunteers passed at the previous meeting should not be so construed as to include commissioned officers, but the town refused to adopt the motion, which action of the town is not recorded.

The town appointed a person to see to filling their quota and to superintend the recruiting in the town.

The plaintiff, being a citizen of the town of Danbury, enlisted from that town on the 28th of October, 1862, at Concord, under Anthony Colby, the Adjutant General of this State, who was a legally constituted recruiting officer in this State, to serve for the period of nine months from the mustering into service, unless sooner discharged, which said enlistment was in the usual and legal form of enlistments for the volun-

teer service, and on the said 28th day of October, the plaintiff was duly and legally mustered into the military service of the United States for the period of three years or during the war, as Assistant Surgeon of the Second N. H. Volunteers, and was duly commissioned as such, and proceeded at once to join said regiment, which was beyond the limits of this State, and has remained with them as Assistant Surgeon ever since —his family remaining in said town of Danbury.   At the time of said enlistment and mustering into the military service of the United States, the quota of men assigned to said town of Danbury by the military authorities of this State, to serve for three years, had been filled, but the quota so assigned to serve for nine months was not then, nor is it now filled.

Since the enlistment of the plaintiff, the selectmen of the town have paid other persons the sum of two hundred dollars each who have enlisted for nine months, prior to the enlistment of the plaintiff, as aforesaid, under a recruiting officer appointed for said town by the selectmen.

On the 30th day of October, 1862, the plaintiff called on the selectmen of the town and informed them of his enlistment, and that he had been mustered into the military service of the United States, and requested payment of the two hundred dollars bounty voted by the town, which the selectmen refused to pay, and have ever since refused.   All other persons who have enlisted from said town since the aforesaid votes of the town have been paid in accordance with said votes, and among them one commissioned officer.

The $5000 raised by the town under the vote of August 12th, 1862, was all expended before the enlistment of the plaintiff, but the town have paid for bounties since the vote to raise $5000, as aforesaid, between seven and eight thousand dollars, under the aforesaid votes of the town.

If the Court are of the opinion that the town, on the foregoing facts, is liable to the plaintiff for the $200 claimed by him, judgment shall be ordered for that sum, in addition to the amount confessed, with costs, and if the town is not liable to pay the $200 the case shall be discharged. Neither party waives the right to go to the jury as to any facts herein stated.   The writ, records and other original papers may be referred to in the argument if desired.

*Pike & Barnard,* for plaintiff.

*W. T. Norris,* for defendant.

NESMITH, J.   In *Crowell* v. *Hopkinton,* 45 N. H. 9, this court gave a construction to Section 3 of Chap. 2580, Pamphlet Laws, passed in 1862, purporting to confer power upon cities and towns in this State to raise and appropriate money to encourage voluntary enlistments.   We understand that, in that case, it was settled :

1. That towns have no authority, as part of their ordinary powers, to raise money to pay bounties to volunteers in the military service of the United States.

2. A vote by a town to pay a bounty to those who may or shall enlist into such service &c., will be held valid as to those who do afterwards enlist.

It will be understood, that, prior to the votes of the town of Danbury referred to in this case, the Government had called for 300,000 troops to serve for three years, or during the war; and also from the militia of the United States, had called for the like number of men to serve for the term of nine months.

The case finds that, prior to the enlistment or mustering into service of the plaintiff, the quota of men assigned by law to said town of Danbury to serve for three years had been then more than filled, but the quota of what were called nine months men was not then filled. Then, on the 28th day of October, 1862, the quota of the three years being full, there was no vacancy to be supplied by the town of Danbury, and it appears to us, the power of the town to tax their citizens to pay bounties to more men enlisted into the three years service had been exhausted, because when plaintiff enlisted, the town had already discharged her whole legal duty in this respect. The town having already *voluntarily* paid their money to a surplus of men for a three years service, does not furnish sufficient or satisfactory reasons why it should continue to do this against their dissent. At the time of the enlistment by plaintiff there then was apparently but one avenue, through and by which, he could receive or entitle himself to the benefits of the bounty offered by the defendant town.

To meet the requirements of the law then in force, the ·town needed a larger number of nine months men to be employed under the authority of the United States wherever directed. The case finds that plaintiff first enlisted into the military service for the term of nine months, and on the same day was mustered into service, as an assistant surgeon, into the Second Regiment of N. H. Volunteers, for the term of three years, and that he immediately entered into and did service in the latter capacity. As we understand the term *enlistment,* it implies an enrollment or engagement to serve according to the requirements prescribed by law, and for a specific time, in the military service of the United States. The recruiting officer receives the assent of the party enlisting to perform his engagements agreeably to the usage of the service in which he agrees to serve. The enlistment is but a contract begun. It is a preliminary to the final examination of the soldier, and his acceptance by such other officers as are assigned to perform the duty of *mustering into service.* The *mustering-in officers* have the power to reject or to accept the applicant, and the contract to serve for any requisite period becomes complete and binding on both sides, when the soldier or officer is finally examined, accepted, enrolled and mustered into service.

Such we understand to have been, substantially, the law or practice regulating enlistments, &c., in October, 1862. To entitle the plaintiff to receive the town bounty incident to the nine months service, he must have been in truth and in fact enrolled into the military service in such a manner and to such an extent as to justify the enrolling officers to re-

port him, when requested by the proper authority, as a soldier or an officer belonging to that distinct service and as furnished by the town of Danbury. Now, whether, in the true sense of the law, plaintiff ever engaged to serve for the term of nine months, either as a private or an officer, in such a manner that he might be reckoned, as one of the nine months quota for the town of Danbury, becomes a material matter of inquiry here, and one, under all the evidence, proper to be submitted to the jury.

We have not had access to the records, containing the engagements or enlistments of October 28th, 1862. Doubtless the engagement or enlistment of the plaintiff here, to entitle him to a bounty, must be understood as a bona fide contract to serve in some capacity for the stipulated term of nine months. The enlistment must not be colorable or for the mere pretence of obtaining a bounty from the town. If, in good faith, the plaintiff, in the forenoon of October 28th, 1862, enlisted as a nine months volunteer, and subsequently was promoted to a higher rank and longer service by the authorities competent to confer rank, or was duly and legally transferred, in conformity to the usual requirements in such cases, to another and longer service, we are not prepared to say but that there was a *time* when the plaintiff might with propriety be considered as belonging to such nine months service, so as to entitle him to the town bounty.

We find that the plaintiff was in fact mustered into a three years service on the same day of his enlistment. For the purpose of giving a construction to a contract, and gathering the true intent of the parties, it is frequently safe to look at the acts done under it. Hence, where a party in the first instance makes an engagement for a shorter term of service, and about the same time, or on the same day, actually commences, or enters upon, the duty of discharging the obligations of a longer period of service, the legal presumption would naturally be that the obligations of the shorter term of service had been abandoned by mutual consent, or commuted for those of the longer term. Generally, the law will properly regard the contract, which has been actually executed by the parties, as the one originally made and intended by the parties to it. There is in this case no good reason to presume that the Government or its officers were not willing to exchange the shorter term of service for the longer. Hence, upon this view of the circumstances of the case, we think it may be fairly inferred, that, by the mutual assent of the parties in interest, the contract implied by the first enlistment here was subsequently merged into the other contract to serve for the longer period of three years; because the case finds that the plaintiff undertook actually to discharge the duties of the three years service, and did not enter upon the execution of the nine months service. What the plaintiff did, therefore, forms the best interpretation of his own true meaning and intent. And the plaintiff being competent to make his own contracts, is presumed to have duly considered the advantages, and all the legitimate consequences incident to them. We are aware that these views may be materially modified, or wholly changed, when all the facts

of the case shall hereafter be presented. We present our inferences upon the facts as they now appear in the case.

Upon the remaining point suggested in the case, that the plaintiff should not receive his town bounty for the reason, that he is found by the appointing power, worthy to receive the honors and emoluments of a commission, we think the objection cannot prevail, because such a discrimination would be unjust in itself, and not within the legitimate scope or meaning of the vote of the town, or the act which justifies the vote.

Agreeably to the original case, it is now discharged for further proceedings before the jury.