March 22,
1876.                    STARK v. LANCASTER.

### Highways—Evidence.

If a town permits a turn-out to exist from the travelled part of its highway
to a private way, over adjoining land, with all the characteristic marks
of a highway, it will be bound to keep such part of the turn-out as is
within the laid out limits of the highway in suitable repair for the
travel usually passing over it.

Whether or not such turn-out was sufficient, whether its defective condi-
tion was the proximate cause of an accident to a team, and whether the
driver was in the use of sufficient care, are all questions for the jury;
and the evidence tending to show the condition of the highway, and that
the accident commenced at the point where the defect was alleged to
have existed, although the injury was received off the highway, the court
cannot say, as matter of law, that there was nothing for the jury to
consider.

FROM Coös CIRCUIT COURT.

CASE, for damages by reason of injuries to the plaintiff's horse and
wagon on a highway.   The declaration contains two counts,—the first
alleging, generally, that the highway was obstructed, defective, insuffi-
cient, and in want of repair, by reason whereof the damage was done;
the second alleging that the highway was " out of repair, defective,
and unsafe, in this, to wit, that where the said highway passes the
White Mountains (N. H.) Railroad grounds and depots, the turn-out
or pass leading from the travelled part of said highway to said grounds
and depots was obstructed, insufficient, defective, and in want of re-
pair."   It appeared in evidence that there were running parallel through
the village of Lancaster, nearly north and south, two streets—Main and
Summer streets.   The defendants laid out the highway in question,
called Railroad street, the same running nearly easterly and westerly
from a point on Main street to a point on Summer street, a distance of
about one hundred rods, and three rods in width, on November 16,
1870.   The road was in sufficient repair to accommodate the travel
upon it between Main and Summer streets.   The road was laid out and
built before the railroad depot was constructed.   The railroad was con-
structed and opened for use about November 1, 1870.   About half way
between Main and Summer streets the railroad had a piece of land, for
depot purposes and for its road bed, ten rods wide.   Its track passed
through the same, north and south, one hundred and eighteen feet
from the westerly side thereof.   Railroad street crossed the railroad at
right angles.   The freight and passenger depots were in the same
building, and located on the westerly side of the track, about one hun-
dred and forty-five feet northerly of the centre of Railroad street.   The

land between Main and Summer streets, including the railroad land, is low and level, and the defendants had so constructed Railroad street as to leave ditches on either side, the same being, on an average, about two feet lower than the centre of the road, and about twenty inches lower than the unwrought surface on the outside. This was the only highway crossing the depot or grounds, and there was a large amount of travel upon it. On the northerly side of Railroad street, at the point where it intersected the railroad track, there was a turn-out or pass leading northerly over the ditch, along the westerly side of the railroad track to the depot. The turn-out or pass from the central travelled part of the highway, within the limits of the same, to the depot grounds, was made by placing at the bottom of the ditch a plank box culvert, covering it with dirt, and filling up the sides so as to make it level with the wrought and travelled portion of the highway and depot grounds on either side. This culvert and turn-out were not put in or built by the town or by its authority. The distance from the iron on the side-track westerly, to the westerly end of the culvert, was eighteen feet, and from the end of the railroad ties to the same point was six-teen feet, at which point there was an off-set to the bottom of the ditch of two feet and seven inches. The rest of the ditch westerly across the railroad land was uncovered, and no provision had been made for crossing it. The culvert was seven feet inside from the northerly line of the highway, and as many feet northerly of the travelled path thereof. Prior to and on July 24, 1871, the travel upon the highway to and from the depot and depot grounds passed from and came to the high-way over the culvert and turn-out. The turn-out had every appearance of being made for the public to use in going to and from the depot, and the wheel tracks, and all the other indications usually made by public travel, were plainly visible on the same from the central travelled part of the highway. There were no railings or guards to keep people from going to the turn-out, nor to keep them from getting on to the railroad track, or into the ditch at the off-set from the turn-out. At a distance of fifty-five feet south of the culvert there was a switch, at which point the side track began, and ran northerly past the depot. The westerly rail of the main track was within the rails of the side track at a point easterly of the culvert. There was also another side track extending northerly beyond the depot on the east side of the main track. The tracks from the switch northerly were used for making up trains, and doing the ordinary yard work of a railroad at stations situated at the terminus of a road, as this was. On July 24, 1871, Thomas Tyrie, then residing at Groveton, N. H., hired the plaintiff's horse and wagon for bringing his wife to said depot, that she might take the morning train of cars for Boston. He went to the depot, passing over the highway and turn-out, following the common course of travel, where he arrived before the train left. He hitched his horse on the westerly side of the depot, and waited till his wife left on the train, when he took his horse and wagon and started to go on to Railroad street in the way he came. When he got on to the turn-out by the side of the

track, about thirty feet north of the culvert, an engine, with a freight car attached, standing some distance south of the switch on the main track, and which not being in motion, and emitting no smoke, steam, or noise, had been unobserved by him, suddenly started and came rapidly up the track towards him. The horse passed along and was just ready to turn into the central travelled portion of the highway, having her hind feet nearly opposite the offset at the westerly end of the culvert, when she became so frightened at the engine and car that she refused to go forward, began to sway right and left as if to dodge the engine coming towards her, and being reined to prevent her turning to the right into the ditch at the end of the culvert, or to the left on to the track in front of the engine, she commenced running back, cramping the wagon to the right from the track, till she had got about thirty-five feet north of the culvert, when she had so turned around that her head was facing the railroad track. At that instant the engine passed on the main track, and she gave a lurch and threw herself upon the ground, her fore feet passing over the outer rail of the side track. The freight car having been unshackled and switched on to the side track, came immediately along and cut off her forelegs. The wagon-shafts were broken, and the wagon otherwise injured. The mare, being made worthless, was killed. The defendants soon after made a box culvert, and covered the same with dirt from the westerly end of the culvert to the westerly line of the railroad land, making the surface of the whole similar to the surface of the culvert. The plaintiff having rested his case, the defendants moved for a nonsuit. It being agreed by the defendants, that, if their motion should be overruled by the full bench, judgment should be rendered for the plaintiff for $143.19 damages, and costs of court, the court *pro forma* ordered a nonsuit. The plaintiff excepted.

Case reserved for the late supreme court by FOSTER, J.

*Crawford* and *G. A. Bingham*, for the plaintiff.

*Burns & Ray*, for the defendants.

CUSHING, C. J. The only question to be decided in this case is, whether the nonsuit was rightly ordered,—in other words, whether there was anything for the jury to consider.

The first count alleges generally that the highway was defective and insufficient, &c. The second count alleges that the culvert was insufficient, and in each count it is alleged that the accident happened by reason of such insufficiency.

It is true that the culvert was not within the travelled part of the highway proper, but it was a part of a turn-out from the highway connecting with a pass from the highway to the depot. This turn-out had all the appearance of a regular highway, and a great amount of travel is said to have passed over it.

I think, as matter of law, although I have not noticed any case

exactly in point, that if the town permitted such a turn-out to exist from the highway to the way over the depot grounds, it was bound to keep in repair so much of such turn-out as was within the limits of the highway as laid out. *Coggswell* v. *Lexington,* 4 Cush. 307, seems to be, in principle, an authority for this view.

Whether the town would have a right to prevent travel from its highway to the depot ground, or from the depot ground to the highway, it is not now necessary to inquire. The town did permit it. Travellers, finding the road thus apparently travelled, would have a right to travel there, and to rely upon finding the road in suitable condition.

This being so, the questions whether the culvert was wide enough or otherwise sufficient, whether the accident would have been avoided had the culvert been sufficient to permit the horse to turn to the right and leave behind her the object of her terror, whether the accident was so proximately occasioned by the insufficient culvert as that the town would be liable, and whether the driver was in the use of sufficient caution, were all emphatically questions for the jury. The distinction between remote and proximate causes has been much discussed in comparatively recent American cases. The rapidity with which fires from locomotives have spread, and the enormous extent of the injury, have brought this matter much into notice. In 3 Parsons on Contracts 178 (6th ed.), the rule is stated as follows: "We have been disposed to think that there is a principle, derivable on the one hand from the general reason and justice of the question, and on the other hand applicable as a test in many cases, and perhaps useful, if not decisive, in all. It is, that every defendant shall be held liable for all of those consequences which might have been foreseen and expected as the result of his conduct, but not for those which he could not have foreseen, and was therefore under no moral obligation to take into his consideration." This rule is substantially adopted in *A. T. & S. F. R. R. Co.* v. *Stanford,* 12 Kansas 354, and *Fent* v. *T. P. & W. Railway Co.,* 59 Ill. 349; and it appears to me that the same is the rule adopted in the English cases. In 6 Am. R. 599, the learned editor, in a note to the case of *Flynn* v. *S. F. & S. J. R. R. Co.,* says,—" A *resumé* of the discussion, and an observation of the course of decisions, both in England and the United States, will reveal the fact that not until recently has this distinction been advanced in the courts. In fact, the decisions of England do not furnish a single instance of the distinction." So far as I have noticed, the remark is just.

If the rule, as suggested by Professor Parsons, is correct, as I believe it to be, it will follow that the question, whether the damage sustained be the natural and probable consequence of the wrong complained of, will be for the jury. That there was no evidence tending to show that these questions ought to be answered in favor of the plaintiff, the court cannot say as matter of law. As there was evidence for the jury to consider, the nonsuit was improperly ordered.

Judgment must be rendered for the plaintiff according to the provisions in the case.

SMITH, J. Towns are required by statute to keep the highways within their limits in repair suitable for the travel thereon. Gen. Stats., ch. 69, sec. 1. When an action is brought, under the provisions of this statute, the proper question to be submitted to the jury is, whether the immediate and real cause of the damage to the person injured was the defect or obstruction complained of ; or, in the language of the statute, whether the damages happened " by reason of any obstruction, defect, insufficiency, or want of repair, which renders it [the highway] unsuitable for the travel thereon."

The proper inquiry in this case was, whether the want of a suitable culvert in the turn-out leading from the highway to the depot grounds was the prime moving cause of the accident to the plaintiff's team, without the existence of which defect the accident would not have happened ; if so, the plaintiff is entitled to recover, and this was a question for the jury. *Littleton* v. *Richardson*, 32 N. H. 59.

One cause of the accident was the frightening of the plaintiff's horse. The fright of the horse was caused, not by a defect or obstruction in the highway, but by the engine and car of the railway company. Nor was the horse injured by falling into the culvert in the attempt to avoid the engine. It became material, then, to inquire whether he was thrown upon the railway track in attempting to avoid an insufficient culvert; or, in other words, was the culvert so constructed that the highway was not suitable for the travel thereon ? If the jury should find that, notwithstanding the fright of the horse, the injury would not have happened but for the defect in the culvert under the turn-out,—that the insufficient culvert was the direct and proximate cause of the accident,— the plaintiff would be entitled to recover, provided, of course, the conduct of his bailee did not contribute to the accident.

It was contended by the defendants' counsel, in the argument, that a town is not bound to furnish a turn-out for a traveller to get upon the highway ; that a town is bound to clear its highways of everything that may impede the *onward* travel, but that every man must provide the means of ingress and egress as he pleases ; that a town has only to make its highways suitable for the public travel *thereon.*

This position cannot be maintained. In *Stack* v. *Portsmouth*, 52 N. H. 224, BELLOWS, C. J., in delivering the opinion of the court, declared the law to be as follows : " Whether the highway is rendered unsafe by an object without its limits, is a question of fact for the jury. If the defect is established, the inquiry is, whether the plaintiff was in the proper and reasonable use of it.

" In determining that, the question is immaterial whether the plaintiff was travelling across the highway or lengthwise of it. Both modes of use are equally necessary, and there can be no doubt that both are lawful, and, for aught we can see, the duty of the town is the same in respect to both. No authority is cited for any distinction in this respect nor do we find any. The obligation to keep the highway in a reasonably safe condition is for the benefit of all who have occasion to pass over it, in any direction, for the purposes of business, convenience, or

pleasure. Such persons are travellers upon the highway, within the meaning of the statute. They are using it for the ordinary and legitimate purposes for which it was made."

We cannot say, as a matter of law, that here was no evidence to be submitted to the jury upon the question whether the defect in the culvert was the proximate and real cause of the injury to the plaintiff's horse. Whenever the question of remote or proximate cause is raised, it becomes a mixed question of law and fact, to be submitted to the jury under proper instructions. *Fent* v. *Co.*, 59 Ill. 349 ; *Fairbanks* v. *Kerr*, 70 Pa. St. 86 ; *Holden* v. *Railroad*, 30 Vt. 297 ; *Saxton* v. *Bacon*, 31 Vt. 540 ; *Littleton* v. *Richardson, supra ; State* v. *M. & L. R. R.*, 52 N. H. 528. The cases which give a rational explanation of the doctrine of remote and proximate causes, generally show that it is always for the jury to say whether the damage sustained is what the defendant ought to have expected, in the exercise of reasonable care and discretion. The defendant is bound to use the care which the consequences, naturally and reasonably to be expected to follow from negligence, require, and, failing in that, is bound to pay such damages as his negligence has occasioned. According to this view, it would be for the jury to say whether, if the highway were defective, the injury was such as in the exercise of a reasonable discretion ought to have been anticipated. *Cate* v. *Cate*, 50 N. H. 144.

As this question should have been submitted to the jury, the nonsuit must be set aside, and the plaintiff must have judgment according to the provisions of the reserved case.

* STANLEY, J., C. C. The question here is, Was there any evidence competent to be submitted to the jury, and upon which they might find a verdict for the plaintiff ? I am of the opinion that there was.

To balance evidence, weigh probabilities, determine the credibility of witnesses, and draw inferences and conclusions from facts proved, belongs to the jury. *Wendell* v. *Moulton*, 26 N. H. 41 ; *Stone* v. *Danbury*, 46 N. H. 139 ; *Couch* v. *Stevens*, 37 N. H. 169, 174 ; *New Boston* v. *Dunbarton*, 15 N. H. 206.

In order to maintain this action, it was incumbent on the plaintiff to satisfy the jury that the highway in question was not in suitable condition to accommodate the public travel thereon, by reason of some defect, obstruction, or insufficiency which the town were bound to remedy ; and that the plaintiff's bailee, at the time of the happening of the injury complained of, was in the exercise of ordinary care and prudence ; or that the want of ordinary care and prudence on his part did not materially and substantially contribute to produce the injury complained of. These were all questions of fact for the jury to determine upon the evidence. *Johnson* v. *Haverhill*, 35 N. H. 74 ; *Winship* v. *Enfield*, 42 N. H. 198 ; *Chamberlain* v. *Enfield*, 43 N. H. 356 ; *Palmer* v. *Portsmouth*, 43 N. H. 268.

---

* LADD, J., being a resident of Lancaster, did not sit.

Whether a given object is such a defect as would render the town liable for any injury happening in consequence of it, depends upon a variety of facts and circumstances, all tending to furnish an answer to the question, Was the highway at that time and place in a reasonably safe and suitable condition for the customary travel upon it, under all the circumstances attending that particular case?

What would constitute a defect in the principal thoroughfare of a crowded and populous city, might be no defect at all in a highway in a sparsely settled country town. So, too, the question of whether the party injured was in the exercise of ordinary care and prudence, is one peculiarly proper for the determination of the jury. Almost in the nature of the case, evidence of the occurrence of an injury upon the highway cannot be laid before a jury without its showing something as to the care of the sufferer; and the case must be very extraordinary where there is not evidence competent and proper to be submitted to the jury. If there is evidence which the jury may rightfully consider, the question is for their decision. "Where there is evidence to be weighed, the question is to be left to the jury, and the court do not attempt to determine its weight." *Palmer* v. *Portsmouth, supra.* "It is true, in many cases, that where the facts are undisputed, the effect of them is for the judgment of the court, and not for the decision of the jury. This is true of that class of cases where the existence of such facts comes in question, rather than where deductions and inferences are to be drawn from the facts. Certain facts we may suppose to be clearly established, from which one sensible, impartial man would infer that there was no defect, or that proper care had not been used, and that negligence existed. Another, equally sensible and equally impartial, would infer that proper care had been used, and that there was no negligence and no defect. It is this class of cases, and those akin to it, that the law commits to the decision of a jury. Twelve men, of the average of the community, comprising men of education and men of little education, men of learning and men whose learning consists only in what they themselves have seen and heard, the merchant, the mechanic, the farmer, the laborer, there sit together, consult, apply their separate experience of the affairs of life to the facts proved, and draw a unanimous conclusion. This average judgment, thus given, it is the great effort of the law to obtain. It is assumed that twelve men know more of the common affairs of life than does one; that they can draw wiser and safer conclusions from facts proved, or admitted, than can a single judge; and in no class of cases can this practical experience be more easily applied, or properly employed, than in that which we are considering." *Railroad* v. *Stone,* 17 Wall. 659.

Whether the highway was defective, was one of the questions in dispute. That there was evidence competent for the jury to consider, from which they might have found a defect, is not open to question. But it is claimed that the defect, if any, was outside of the limits of the travelled path, and that, as the plaintiff's team was not being driven in the direction of the road, the town was not liable. This position,

however, is fully answered in *Stack* v. *Portsmouth*, 52 N. H. 221. Entertaining these views, there must be judgment for the plaintiff according to the provisions of the case.

*Exceptions sustained.*