## GIBHERD FENT *et al.*

*v.*

## THE TOLEDO, PEORIA & WARSAW RAILWAY CO.

1. DEMURRER TO EVIDENCE—*what is admitted thereby.* Where a demurrer is interposed to the evidence, the rule is, that the demurrer admits not only all that the plaintiff's testimony has proved, but all that it tends to prove.

2. REMOTE AND PROXIMATE CAUSE—*of the rule and its application.* If fire is communicated from a railway locomotive to the house of A, and thence to the house of B, it is not a conclusion of law that the fire sent forth by the locomotive is to be regarded as the remote, and not the proximate, cause of the injury to B, but that is a question of fact, to be determined in each case by the jury under the instructions of the court.

3. The rule is, to determine in every instance whether the loss was one which might reasonably have been anticipated from the careless setting of the fire, under all the circumstances surrounding the careless act at the time of its performance. If loss has been caused by the act, and it was, under the circumstances; a natural consequence which any reasonable person could have anticipated, then the act is a proximate cause, whether the house burned was the first or the tenth, the latter being so situated that its destruction is a consequence reasonably to be anticipated from setting the first on fire.

4. If, on the other hand, the fire has spread beyond its natural limits by means of a new agency—if, for example, after its ignition, a high wind should arise, and carry burning brands to a great distance, by which a fire is caused in a place that would have been safe but for the wind—such a loss might fairly be set down as a remote consequence, for which the railway company should not be held responsible.

5. In this case, which was an action against a railway company to recover for the loss of the plaintiff's house by fire, alleged to have been occasioned by the negligence of the company, it appeared that a locomotive, with a train of freight cars, belonging to the defendant, in passing eastwardly through a village, threw out great quantities of unusually large cinders, and set on fire two buildings and a lumber yard. The weather at the time was very dry, and the wind blowing freely from the south. One of the buildings ignited by the sparks was a warehouse near the track. The heat and flames from this structure speedily set on fire the building of plaintiff, situated about two hundred feet from the warehouse, and destroyed it. It was *held*, the company was not exonerated from liability merely because the plaintiff's house was set on fire, not immediately by cinders

| 59 | 349 |
| 143 | 259 |
| 59 | 349 |
| 65a | 563 |
| 59 | 349 |
| 73a | 193 |
| 59 | 349 |
| 175 | 416 |
| 78a | 265 |
| 59 | 349 |
| 169 | 141 |
| 72a | 673 |
| 59 | 349 |
| 183 | 485 |
| 59 | 349 |
| f188 | 501 |
| 59 | 349 |
| d191 | 235 |
| f96a | 182 |
| 98a | 542 |
| 59 | 349 |
| 193 | 210 |
| 59 | 349 |
| 100a | 533 |
| 59 | 349 |
| 201 | 319 |
| 59 | 349 |
| e111a | 230 |

thrown from the locomotive, but by the burning of another house. The case was one calling for the application of the rule before announced, the liability of the company depending upon the question whether the second house was so near the first that, in the then state of the wind and weather, its destruction was a natural consequence of the burning of the first, which any reasonable person could have foreseen and would have expected.

6. SAME—*how the rule affected by the extent of loss to the wrong doer.* The propriety of the rule for determining what is a proximate cause of the injury in such a case, can not be affected by considerations as to the extent of liability to which railway companies might be thereby subjected, even to producing bankruptcy, and compelling them to suspend their operation.

APPEAL from the Circuit Court of Livingston county; the Hon. CHARLES H. WOOD, Judge, presiding.

Messrs. STRAIGHTS, YOUNG, HARDING & PAYSON, for the appellants.

Messrs. INGERSOLL & McCUNE, for the appellee.

Mr. CHIEF JUSTICE LAWRENCE delivered the opinion of the Court:

On the 1st of October, 1867, a locomotive, with a train of freight cars, belonging to the appellee, in passing eastwardly through the village of Fairbury, threw out great quantities of unusually large cinders, and set on fire two buildings and a lumber yard. The weather at the time was very dry, and the wind blowing freely from the south. One of the buildings ignited by the sparks was a warehouse near the track. The heat and flames from this structure speedily set on fire the building of plaintiffs, situated about two hundred feet from the warehouse, and destroyed it and most of its contents. To recover damages for this loss, the plaintiffs have brought this suit.

The defendant in the circuit court demurred to the plaintiffs' evidence, and the court sustained the demurrer. To reverse this judgment, the plaintiffs bring up the record.

The evidence shows great negligence on the part of defendant, but it is unnecessary to discuss this question. Where a

demurrer is interposed to the evidence, the rule is, that the demurrer admits not only all that the plaintiffs' testimony has proved, but all that it tends to prove. In this case, therefore, the defendant's negligence must be regarded as admitted. It is not, indeed, controverted, but the counsel rely for defense solely upon the ground that the plaintiffs' building was not set on fire directly by sparks from the defendant's locomotive, but by the burning of the intermediate warehouse, and that therefore the defendant is to be held harmless, under the maxim " *causa proxima, non remota, spectatur.*"

There are not many of the maxims of the law which touch so closely upon metaphysical speculation. The rule itself is one of universal application, but the difficulty lies in establishing a criterion by which to determine when the cause of an injury is to be considered proximate, and when merely remote. Greenleaf, in the 2d volume of his Evidence, sec. 256, lays down the rule that " the damage, to be recovered, must always be the *natural and proximate consequence* of the act complained of." But this seems little more than the substitution of one form of general expression for another.

Parsons, in his work on Contracts, vol. 2, page 456, 1st ed., after alluding to the confusion in which the adjudged cases leave this question, says: " We have been disposed to think that there is a principle derivable on the one hand from the general reason and justice of the question, and on the other applicable as a test in many cases, and perhaps useful, if not decisive, in all. It is, that every defendant shall be held liable for all of those consequences which might have been foreseen and expected as the results of his conduct, but not for those which he could not have foreseen, and was therefore under no moral obligation to take into consideration." We are disposed to regard this explanation of the rule as clearer, and capable of more precise application, than any other we have met with in our examination of this subject, and it is in substantial accord with what is said by Pollock, C. B.. in *Higby* v. *Hewitt*, 5 Exch. 240.

The counsel upon both sides have furnished us with a very elaborate review of the decided cases. We have not the time, and it would be an unnecessary labor, to go over them in detail.

With the exception of two recent cases decided in this country upon the precise question before us, it can not be denied that the great current of English and American authorities would bring the defendant in this case within the category of proximate causes. The great effort of the counsel for defendant has been to explain away, as far as possible, the effect of these authorities, and to draw a distinction between them and the case at bar. However successful they may have been in showing a difference between some of the cases cited by appellants' counsel and that under consideration, on the other hand, they cite no English case, and but two American cases, in which a wrong doer has been excused from liability under circumstances analogous to those disclosed by this record, on the ground that he was a remote, and not a proximate, cause of the injury done.

From the oft-quoted squib case of *Scott* v. *Shephard*, 2 W. Black. 892, down to our own day, the English reports abound with instances in which causes more remote than the cause in this case, have been held sufficiently direct and proximate to be made a ground of damages. As illustrative of this, we content ourselves with citing *Illidge* v. *Goodwin*, 24 E. C. L. 272, *Lynch* v. *Mudin*, 41 E. C. L. 422, *Ridgely* v. *Hewitt, ubi supra*, *Greenland* v. *Chaplin*, 5 Exch. 243, and *Montoyer* v. *London Insurance Co.*, 6 Exch. 451. In this last case, the defendant had insured the plaintiff's tobacco against perils of the sea. Hides were shipped in the same vessel. The vessel shipped sea water, which, coming in contact with the hides, caused them to ferment. The fermentation created a noxious vapor which acted on the tobacco and spoiled its flavor. Suit was brought against the company, and the defense was the same relied upon in this case. The court held the defendant responsible, and said in its opinion: "The sea

water having caused the hides to ferment, and thereby the tobacco to be spoiled, it is merely playing with terms to say the injury is not occasioned by the sea water. The action of the sea water, which had been shipped in consequence of bad weather, occasioned the fermentation, and is the proximate cause."

If we turn to the American courts, we shall find the general current of authorities to be in harmony with the English precedents. A late case, and one in which a cause much more remote than the fire from the locomotive in the case before us, was held the proximate cause, is *Tweed* v. *Insurance Co.,* 7 Wallace, 44. It was an action brought against an insurance company to recover for cotton stored in a warehouse, and insured against fire, except loss by fire caused by explosion, invasion, etc. An explosion occurred in another warehouse, from which explosion fire was communicated to the Eagle Mills, situated on the opposite diagonal corner, and from thence to the warehouse in which the cotton was stored. In the circuit court a judgment was obtained against the company, on the ground that the immediate cause of the loss was the fire from the Eagle Mills, and the case was not, therefore, within the exception of the policy. This would seem not an unreasonable view, but the Supreme Court of the United States reversed the judgment, and in delivering their opinion, use the following language: " One of the most valuable of the *criteria* furnished us by the authorities, is to ascertain whether any new cause has intervened between the fact accomplished and the alleged cause. If a new force or power has intervened, of itself sufficient to stand as the cause of the mischief, the other must be considered too remote. In the present case we think there is no such new cause. The explosion undoubtedly produced or set in operation the fire which burned the plaintiff's cotton. The fact that it was carried to the cotton by first burning another mill, supplies no new force or power which caused the burning."

23—59TH ILL.

That case was far stronger for the plaintiff than the one at bar is for the defendant.

*Powell* v. *Deveney*, 3 Cush. 300, and *Vandenburg* v. *Truax*, 4 Den. 464, are cases in which the court went back further for the proximate and responsible cause than we are asked by the plaintiff to go in the present instance.

The case of *Hart* v. *Western Railroad Co.* 13 Metc. 99, presented precisely the same question with that before us. The locomotive set fire to a shop, and the fire crossed the street and destroyed a dwelling house. The court held the company liable.

In *Perley* v. *Eastern Railway Co.* 98 Mass. 414, a similar judgment was pronounced upon a similar state of facts.

Counsel for appellee seek to weaken the authority of these cases by adverting to the fact that they were decided under a statute of Massachusetts making railway companies liable for all losses by fire communicated from their locomotives, and authorizing them to insure against such risks. But the statute does not in the least degree affect the common law principle under consideration, and was not so regarded by the court in these decisions. It simply makes the companies liable for fires caused by them, irrespective of the question of negligence. But if the locomotive was the remote, instead of the proximate cause, in the sense of the maxim we are now discussing, there would have been no liability under the statute any more than at common law. Upon this question of cause, the cases are as much in point as if there had been no statute. The court, in the last case, in discussing this very objection, that the cause was not proximate, say: "The fact, therefore, that the fire passes through the air, driven by a high wind, and that it is communicated *to the plaintiff's property from other inter-mediate property of other men,* does not make his loss a remote consequence of the escape of the fire from the engine." And in another part of the opinion we find the following language: "If, when the cinder escapes through the air, the effect which it produces upon the first combustible substance

against which it strikes, is proximate, the effect must continue to be proximate as to everything which the fire consumes in its direct course.   This is so, whether we regard the fire as a combination of the burning substance with the oxygen of the air, or look merely at its visible action and effect.   As matter of fact, the injury to the plaintiff was as immediate and direct as an injury would have been which was caused by a bullet fired from the train passing over the intermediate lots, and wounding the plaintiff as he stood upon his own lot.   It is as much so as pain and disability are proximate effects of an injury, though they occur at intervals through successive years after the injury was received.   Yet these are called proximate effects, though the actual effects of the injury may be greatly modified, in every case, by bodily constitution, habits of life, and accidental circumstances."

In *Cleveland* v. *Grand Trunk Railway Co.* 42 Ver. 449, a like rule was applied, without discussion, to similar fires occasioned by locomotives.

The same rule has also been enforced in two recent English cases.   *Piggott* v. *The Eastern Counties Railroad Co.* 54 E. C. L. 229, and *Smith* v. *The London & S. W. Railroad Co.* 5 Law Rep. Com. Pleas, 98.   In the first case, the fire was communicated from the first building destroyed to several other frame buildings belonging to the plaintiff.   He was allowed to recover, and the counsel for the company obtained a rule *nisi* for a new trial.   The rule was subsequently argued before the common pleas, and discharged, all the judges concurring.   The precise point under consideration was not ruled by the court, and we cite the case because the question of proximate cause seems never to have occurred to the counsel or court, all of whom bore names familiar to the profession.   It was not suggested that a recovery could not be had for all the buildings as well as for that immediately set on fire by the locomotive.

In the last case, the servants of the railway company had cut the grass, trimmed a hedge bordering the railway, placed the trimmings and grass in heaps near the line, and allowed

them to remain there fourteen days during very hot weather, in the month of August. Fire from a passing engine ignited one of these heaps, burned the hedge, and was thence carried by a high wind across a stubble field and a public road and burned the plaintiff's cottage, situate two hundred yards from the railway. There was no evidence of negligence in the construction or management of the engines, the negligence alleged consisting in leaving the hedge trimmings in dry weather near the railway line, where they would be liable to be ignited. There was a verdict for the plaintiff, and leave given to the defendants to move for a nonsuit. On the argument of the motion before the common pleas, it was contended, in support of the rule, that the defendants' servants cut the grass and trimmed the hedge in the ordinary course of their duty, and but for the great heat of the weather, and the high wind prevailing at the time of the fire, a combination of circumstances which the defendants could not have foreseen, the burning of the cottage would not have occurred.

It was urged that this was a result which no reasonable person could have anticipated. This was a very far weaker case against the company than the one at bar, and the position of the counsel for the defendant was adopted by one of the judges. But the other members of the court were of opinion the evidence sustained the verdict, and they discharged the rule.

The chief justice, in giving his opinion, uses the following language: "It is said no reasonable man could have supposed that, even if the fire did communicate to the hedge, it would run across a stubble field and a public road, and so reach a building at the distance of two hundred yards from the railway. But seeing that the defendants were using dangerous machines, that they allowed the cuttings and trimmings to remain on the banks of their railway in a season of unusual heat and dryness, and for a time which, under these circumstances, might be fairly called unreasonable, and that there was evidence from which it might reasonably be presumed that their engines caused the ignition of these combustible

materials, and that the fire did, in fact, extend to the cottage, I think it impossible to say there was not evidence from which a jury might be justified in concluding that there was negligence as regards the plaintiff, and that the destruction of the cottage in which the plaintiff's goods were, was the natural consequence of their negligence; what the defendants' servants ought, as reasonable men, to have contemplated as the result of leaving the accumulation of cuttings and trimmings where and as they did, must depend on all the circumstances."

Counsel for appellee rely upon three adjudged cases in support of the decision of the circuit court. The first is *Marble* v. *Worcester*, 4 Gray. That was a case in which it was sought to recover damages from the city by a person who had been thrown down and injured by a horse that had become frightened, freed himself from the vehicle to which he was attached, and run away. The recovery was sought against the city on the ground that the horse had been frightened by the striking of a vehicle against a defect in the highway. The plaintiff had nothing to do with the horse, and was fifty rods distant. The facts presented the question of proximate cause in a difficult and very debatable form, but it was held, by a divided court, that the city was not liable. The case bears but a faint analogy to the present one, and the subsequent case in 98 Mass., above cited, shows that the decision in *Marble* v. *Worcester* was not considered by the court that pronounced it as bearing upon the question presented by this record.

We now come to the two cases chiefly relied upon by appellee's counsel. They are quite in point, but we are wholly unable to agree with their conclusions. One is *Ryan* v. *The New York Central Railroad Co.*, 35 N. Y. 214, and the other is *Kerr* v. *The Pennsylvania Railroad Co.*, decided by the Supreme Court of Pennsylvania, at its May term, 1870. These two cases stand alone, and we believe they are directly in conflict with every English or American case, as yet reported, involving this question.

As we understand these cases, they hold that, where the fire is communicated by the locomotive to the house of A, and thence to the house of B, there can be no recovery by the latter. It is immaterial, according to the doctrine of these cases, how narrow may be the space between the two houses, or whether the destruction of the second would be the natural consequence of the burning of the first. The principle laid down by these authorities and urged by counsel in this case is, that, in order to a recovery, the fire which destroys the plaintiff's property must be communicated directly from the railway, and not through the burning of intermediate property. With all our respect for these courts, we can not adopt this principle, and it is admitted by the judges who delivered the opinions to have no precedent for its support, and to be absolutely in conflict with former adjudications. Indeed, only one year prior to the decision in New York, the same court, in *Field* v. *New York Central Railroad Co.* 32 N. Y. 345, pronounced a judgment which we can not reconcile with the later case.

It has often been held by this and various other courts, that, if fire is communicated to the dried grass of an adjoining field, through the carelessness of the persons managing a railway locomotive, and spreads over the field, no matter to what extent, destroying hay stacks, fences and houses, the company is liable. The correctness of these decisions is not assailed by appellee's counsel, and we have no doubt the same rule would be applied by the courts that decided the cases upon which counsel rely. But if these two decisions, in New York and Pennsylvania, are correct law, it must be held that, if fire is communicated from the locomotive to the field of A, and spreads through his field to the adjoining field of B, while A must be reimbursed by the company, B must set his loss down as due to a remote cause, and suffer in uncomplaining silence. Would there not be, in such a decision, a sense of palpable wrong, which would justly shock the public conscience and impair the confidence of the community in the administration

of the law. While the law to be administered by the courts should not be a mere reflex of uneducated public opinion, at the same time it should be the expression of a masculine common sense, and its decisions should not be founded on distinctions so subtle that they might have afforded fitting topics to the schoolmen. If the field of A contains forty acres, and the whole is overrun by fire, he may recover for the whole. But if A owns twenty acres next to the railway, and B the remaining twenty acres of the same field, A shall recover, according to the doctrine of these cases, but B shall not. Yet, the test question is, what is the proximate cause of the fire, and this ruling makes the proximate cause depend upon whether the field of forty acres is owned by one person or by two.

Let us suppose another case. Both these opinions, upon which we are commenting, expressly admit, as both courts have decided, that if, through the negligence of a railway company, fire is communicated to the building of A, he may recover. But suppose the building is a wooden tenement, one hundred feet in length, extending from the railway. In the Pennsylvania case, the second building was only thirty-nine feet from the first. We presume that court would hold, and appellee's counsel would admit, that A might recover for the value of his entire building, one hundred feet in length. But suppose B owns the most remote fifty feet of the building. Could he recover? We suppose not, under the rule announced in these cases. But why should he not, under any definition of proximate cause that has ever been given by any court or text writer? Take that of Greenleaf, with which counsel for appellee claim to be content. He says the damage must be "the natural and proximate consequence of the act complained of." Is not the burning of the second fifty feet of the building in the case supposed, the natural and proximate consequence of the act complained of, to wit, the careless ignition of the first fifty feet? If it is admitted that there may be a recovery for the second fifty feet of the building as well as for

the first, when there is one continuous building, and whether owned by one person or by two, is it possible that, when the second fifty feet is removed a short space from the first, but still is so near that the burning of the one makes almost certain the destruction of the other, there can be no recovery? Is not the burning of the second building still "the natural and proximate consequence of the act complained of?" It seems to us that the arbitrary rule enforced in these two cases, which is simply this, that when there is negligence, there may be a recovery for the first house or field, but in no event for the second, rests on no maintainable ground, and would involve the administration of the law in cases of this character in absurd inconsistencies. We believe there is no other just or reasonable rule than to determine in every instance whether the loss was one which might reasonably have been anticipated from the careless setting of the fire, under all the circumstances surrounding the careless act at the time of its performance. If loss has been caused by the act, and it was, under the circumstances, a natural consequence which any reasonable person could have anticipated, then the act is a proximate cause, whether the house burned was the first or the tenth, the latter being so situated that its destruction is a consequence reasonably to be anticipated from setting the first on fire. If, on the other hand, the fire has spread beyond its natural limits by means of a new agency—if, for example, after its ignition, a high wind should arise, and carry burning brands to a great distance, by which a fire is caused in a place that would have been safe but for the wind—such a loss might fairly be set down as a remote consequence, for which the railway company should not be held responsible.

The Court of Appeals in New York, and the Supreme Court of Pennsylvania, seem, from their opinions, to have attached great weight to an argument urged upon us by the counsel for appellee, and indeed that argument seems to have been the chief reason for announcing a rule which both courts struggle in vain to show is not in conflict with all prior adjudications.

That argument is, in brief, that an entire village or town is liable to be burned down by the passing of the fire from house to house, and if the railway company, whose locomotive has emitted the cinders that caused the fire, is to be charged with all the damages, these companies would be in constant danger of bankruptcy, and of being obliged to suspend their operation. We confess ourselves wholly unable to see the over-powering force of this argument. It proceeds upon the assumption that, if a great loss is to be suffered, it had better be distributed among a hundred innocent victims than wholly visited upon the wrong doer.

As a question of law or ethics, the proposition does not commend itself to our reason. We must still cling to the ancient doctrine, that the wanton wrong doer must take the consequences of his own acts, whether measured by a thousand dollars or a hundred thousand.

As to the railroads, however useful they may be to the regions they traverse, they are not operated by their owners for benevolent purposes, or to promote the public welfare. Their object is pecuniary profit. It is a perfectly legitimate object, but we do not see why they should be exempted from the moral duty of indemnification for injuries committed by the careless or wanton spread of fire along their track, because such indemnity may sometimes amount to so large a sum as to sweep away all their profits. The simple question is, whether a loss, that must be borne somewhere, is to be visited on the head of the innocent or the guilty. If, in placing it where it belongs, the consequence will be the bankruptcy of a railway company, we may regret it, but we should not, for that reason, hesitate in the application of a rule of such palpable justice.

But is it true that railroads can not thrive under such a rule? They have now been in operation many years, and extend over very many thousand miles, and we have never yet heard of town or village that has been destroyed by a fire ignited by their locomotives. Improved methods of construction, and a vigilant care in the management of locomotives,

have made the probability of loss from this cause so slight that we can not but regard the fears of the disastrous consequences to the railway companies which may follow from an adherence to the ancient rule, as in a large degree chimerical. A case may occur at long intervals in which they will be required to respond in heavy damages; but better this, than that they should be permitted to evade the just responsibilities of their own negligence, under the pretence that the existence of the road may be endangered. It were better that a railway company should be reduced to bankruptcy, and even suspend its operations, than that the courts should establish for its benefit a rule intrinsically unjust, and repugnant not merely to ancient precedent, but to the universal sense of right and wrong.

Our position on this subject is briefly this: We do not desire to impose upon the railway companies unreasonable obligations, or to subject them to unreasonable danger of great pecuniary loss. We do not wish to make them insurers against all damages by fire that may result from the passage of their trains, without reference to the question of remote and proximate cause. But, on the other hand, we do insist on applying to them the same rule that has been held through all the administration of the common law, with the exception of the two cases upon which we have been commenting. As already stated, we understand the doctrine of those two cases, and the position of counsel for appellee to be, that, if fire is communicated from a locomotive to the house of A, and thence to the house of B, it is a conclusion of law that the fire sent forth by the locomotive is to be regarded as the remote, and not the proximate, cause, of the injury to B; and the railway company is, for this reason alone, to be held not responsible. This rule we repudiate as in the teeth of almost numberless decisions, and as unsupported by that reason which is the life of the law.

We hold, on the contrary, as we held in reference to this same fire in the case of *The T., P. & W. R. R. Co.* v. *Pindar*, 53 Ill. 451, that it is in each case a question of fact, to be

determined by the jury under the instructions of the court. Those instructions should be, in substance, what we have already stated. If the fire is the consequence of the carelessness of the railway company, and the question of remote or proximate cause is raised, the jury should be instructed that, so far as the case turns upon that issue, the company is to be held responsible, if the loss is a natural consequence of its alleged carelessness which might have been foreseen by any reasonable person, but is not to be held responsible for injuries which could not have been foreseen or expected as the results of its negligence or misconduct.

In the case before us, owing to the distance of the plaintiff's building from the one first set on fire, this question might not have been one of easy determination. The defendant, however, thought it better not to take the risks of this issue, but, by a demurrer to the evidence, to rest his defense upon the theory that, even admitting all that the evidence tends to prove, there is still no liability.

In this court, the counsel for the company have not discussed the evidence. They place the case on the single ground, that the company is free from liability, because the plaintiff's house was set on fire, not immediately by cinders thrown from the locomotive, but by the burning of another house. Their position is, that this alone exonerates the company, without any reference whatever to the question whether the second house was so near the first that in the then state of the wind and weather, its destruction was a natural consequence of the burning of the first, which any reasonable person could have foreseen and would have expected. This question they have not discussed.

On the legal question upon which appellee's counsel thus rest the case, we can not adopt their views.

On the demurrer to the evidence, we must hold it tended to prove that the fire escaped through the carelessness of the defendant, and that the destruction of the plaintiffs' house was its natural consequence, which any reasonable person could

have foreseen. The demurrer should, therefore, have been overruled.

The judgment is reversed, and the case remanded for trial.

*Judgment reversed.*