## Pennsylvania Railroad Co. *versus* Hope.

1. Sparks from defendants' engine fired a railroad tie, from which rubbish left by the defendants on their road was fired, communicated with plaintiff's fence next to the road and spread over two fields, burned another fence and standing timber six hundred feet distant from the road. *Held*, that the proximity of the cause was for the jury.

2. In such case the jury must determine whether the facts constitute a continuous succession of events so linked as to be a natural whole, or whether the chain is so broken as to become independent, and the final result cannot be said to be the natural and probable consequence of the negligence of defendants.

3. The rule for determining what is proximate cause is, that the injury must be the natural and probable consequence of the negligence, and that it might and ought to have been foreseen under the circumstances.

4. Pennsylvania Railroad Co. *v.* Kerr, 12 P. F. Smith 353, distinguished.

January 18th 1876. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Error to the Court of Common Pleas of *Chester county:* Of January Term 1876, No. 9.

This was an action on the case issued May 15th 1874, by Thomas Hope, against the Pennsylvania Railroad Company. The cause of action was injury sustained by defendant from the burning of his fences, grass and wood by fire thrown from an engine of the defendants through negligence.

The plaintiff was the owner of a tract of land in Chester county, through which the Pennsylvania Railroad passes. On the 18th of March 1873, about 10 A. M., after the mail train westward had passed the plaintiff's farm, it was discovered that his fences and grass were on fire; before the fire was arrested his grass, fences and wood had been much burned.

The case was tried June 17th 1875, before Butler, P. J.

The plaintiff testified that the fire had burned over a considerable portion of two grass fields; had destroyed one hundred and fifty-two panels of fence and had injured much timber; rubbish which had been thrown on the railroad had been burned; the rubbish was weeds and grass which had been cut the fall before and permitted to remain; the distance from the railroad track to his fence was five or six feet; from the railroad to the woods it was about two hundred yards; there was a fence between the field and the woods; about eight panels of fence were burned at the railroad; there was at the time a strong wind blowing from the northeast in the direction which the fire took.

Another witness testified, that whilst working in the field he saw a flame on the railroad, he went to it and found a railroad tie burning, and fire caught from it to some rubbish lying between the railroad and the fence; the rubbish had been cut by the hands of the company and had lain there all winter.

| 80 | 373 |
| 135 | 57 |
| 135 | 59 |
| 80 | 373 |
| 142 | 509 |
| 80 | 373 |
| 165 | 365 |
| 80 | 373 |
| 183 | 589 |
| 80 | 373 |
| f194 | 31 |
| f194 | 515 |
| 80 | 373 |
| 201 | 284 |
| 80 | 373 |
| 20 SC | [1]168 |
| 20 SC | [1]614 |
| 80 | 373 |
| 207 | [2]633 |
| 207 | [1]637 |
| 80 | 373 |
| f 33 SC | [3]586 |
| 80 | 373 |
| e224 | 92 |

[Pennsylvania Railroad Co. *v.* Hope.]

Another witness testified that he saw the fire about five yards from the fence and it went right across the field; he testified also as to the rubbish on the track substantially as previous witnesses, as also did two other witnesses.

Witnesses for the defendants testified that the stack on the engine was the Laird stack, considered at that time amongst the best in use; that all stacks will throw some sparks; that no device had yet been found to prevent the emission of sparks and at the same time allow enough draft to generate steam sufficiently; that the stack of this engine had been examined by the inspector at Philadelphia before it started that morning and at Harrisburg after it arrived; that it was in good condition at each examination, and that it was in good condition also on its return to Philadelphia on the next day. The evidence was full and uncontradicted on these points.

The following are points of the defendants with their answers :—

5. The only evidence in this cause respecting the alleged negligence of the defendant as to the condition of its roadway, is that the natural growth of grass and briers upon the same had, in the summer of 1872, been cut down or pulled up, and to an extent not exceeding half enough to fill a wheelbarrow, placed between the north track of the defendants' road and the fence of the plaintiff, and such evidence is not sufficient in law to justify the jury in finding that the defendants were guilty of negligence in this respect.

6. The evidence as to the condition of the engine and the care of its management is so clearly in favor of the allegations of the defendants, that the same was in good and proper condition and carefully used, that the defendants are not chargeable with any negligence as respects it.

7. There is no such evidence in the cause of negligence on the part of the defendants, either as to the care of their engine, or the care of their roadway, as would justify the jury in finding for the plaintiff.

These points were refused.

8. The sparks emitted from the engine, and the fire thereby caused upon the line of the defendants' roadway were not the proximate cause of the burning of the fence between the pasture land and the woodland itself; both the fence and the woodland being at least six hundred feet distance from the place where the fire originated.

This point was reserved.

The court, amongst other things, charged : * * *

" You will determine how the fact is—whether rubbish in a combustible condition, in quantities sufficient to be dangerous, as before indicated, was permitted to lie alongside the track on the roadway, as the plaintiff charges. The condition of the roadway, however, is of no importance here, if it did not assist to spread

[Pennsylvania Railroad Co. *v.* Hope.]

the fire on to the plaintiff. But, according to all the evidence bearing on the question, it would seem that the fire was first kindled on the roadway, and, by means of combustible matter there, conducted to the plaintiff's property.

"Now, you will determine from the evidence whether the defendants were guilty of negligence (either as respects the engine or the condition of the roadway), by which the fire was kindled or spread on the plaintiff's property. If they were not guilty of such negligence, your verdict will be for the defendants, and you need go no further. If, however, they were guilty of such negligence in either respect—that is, negligence which kindled or spread the fire on the plaintiff—they are responsible to him for all the injury which you shall find to be the direct and natural result of their act. We repeat, the direct, natural result, because it is only for such injury that an individual or corporation is responsible on account of negligence—that which flows directly, naturally, from one's careless act, and which he ought, therefore, to have foreseen, because common prudence would have enabled him to do so. For the remote consequences of such act—consequences which common prudence could not anticipate and foresee—he is not responsible, and in justice should not be.

" And thus we are brought to the last subject that requires our consideration—the question of the plaintiff's loss. His fences at the side of the railroad, by the woods, and dividing his fields, were burned; two fields were burned over; and a part of his woodland, as has been described by the witnesses. You will find from the evidence and the view which you made, what the actual loss from these sources was, and what part of this loss was the direct, natural result of kindling the fire, without the aid of any intervening or contributory cause. The defendants contend that the burning of the woods and the fence adjoining it was not such direct and natural result, but was the remote consequence of the fire, not reasonably to have been anticipated from starting it. If you find this to be so, you will not include the loss from this source in your verdict, if your verdict should be for the plaintiff.

" In conclusion, we will repeat the questions stated : First, were the defendants guilty of negligence by which the fire was kindled on the plaintiff ? If it was not so guilty, your verdict will be in favor of the defendants. If you find the defendants were guilty of such negligence, your verdict will be for the plaintiff for such part of the injury he has sustained by the fire as you find to have been the direct, natural consequence of their negligence, and in such sum as in your judgment may be sufficient to cover the loss arising therefrom. If your verdict is in favor of the plaintiff, and you assess damages for the burning in the woods and the fence adjoining thereto, you will state what you have assessed for the burning in the woods and the fence adjoining, so that we may consider that

part of the plaintiff's claim separately hereafter, if it becomes necessary to do so."

The jury found for the plaintiff $221.32.

The parties afterwards entered into the following agreement:—

" September 13th 1875. It is agreed that the damages embraced in the verdict of the jury shall be apportioned, as apportioned by jury, as follows : For damage to the fence by the railroad and to the grass fields, $30 ; for damage to the fence by the woods the sum of $55 ; for damage to the woodland $110 ; and that the interest for two years and six months, $26.32, mentioned in this verdict, shall be apportioned among the several sums pro ratâ."

Upon the reserved point the court afterwards said :—

" We are now required to dispose of this point. We do so by denying it and directing judgment to be entered for the plaintiff for the whole amount of the damages assessed. Under the circumstances shown, we consider the proximate cause one of fact for the jury. * * * Whenever the injury is the direct result of the act complained of—the natural result—such as should have been anticipated with reasonable certainty, it is not too remote."

The defendants took a writ of error and assigned for error, the answers to the points and entering judgment on the reserved point.

*W. Mac Veagh* and *W. Darlington,* for plaintiff in error, cited Pennsylvania Railroad Co. *v.* Kerr, 12 P. F. Smith 353; Fairbanks *v.* Kerr, 20 Id. 91 ; Ryan *v.* N. Y. Central Railroad Co., 35 N. Y. 210.

*W. E. Barber,* for defendant in error, cited Smith *v.* London & S. W. Railroad Co., Law Rep. 5 C. P. 98; Vaughan *v.* Taff Vale Railroad Co., 3 Hurlst. & N. 679 ; Flynn *v.* San Francisco & St. Jo. Railroad Co., 40 Cal. 14 (6 Am. R. 595) ; Clement *v.* Hannibal & St. Jo. Railroad Co., 53 Mo. 366 (14 Id. 460); Fent *v.* Toledo, P. & W. Railroad Co., 59 Ill. 349 (Id. 13); Kellogg *v.* Chicago & N. W. Railway Co., 26 Wis. 223 (7 Id. 69); Perley *v.* Eastern Railroad Co., 98 Mass. 414; Webb *v.* Rome, W. & O. Railroad Co., 49 N. Y. 420 ; Ins. Co. *v.* Tweed, 7 Wall. 45 ; Pittsburg *.v.* Grier, 10 Harris 65 ; Scott *v.* Hunter, 10 Wright 192; McGrew *v.* Stone, 3 P. F. Smith 436 ; Fairbanks *v.* Kerr, 20 Id. 90.

Chief Justice Agnew delivered the opinion of the court, February 7th 1876.

Two principal questions arise in this case. The first has relation to the fact of negligence as causing the fire, and the second to the nearness or remoteness of the injury to the negligence causing it. The first three assignments of error belong to the former, and the fourth to the latter.

The court submitted to the jury the question of actual negligence. This was proper.  The complaint is not that negligence is not a fact to be determined by them, but that the evidence of it was too weak, while the testimony of the defendant was strong and pointed, that their engine was in good order, well supplied with the best spark arrester, and was carefully and skilfully managed.  It is true that the defendants made out a strong case, but there was such evidence of the fire having been kindled by the engine on the defendants' roadway, and carried thence into the fields of the plaintiff, by the dry grass cut and pulled up and piled with other rubbish upon the defendants' roadway, as tended to contradict the evidence of the defendants, strong as it seemed to be.  The plaintiff's own testimony, as to how the fire kindled and spread, was corroborated by several witnesses.  Hence it became a question of veracity and probability, which could not be withdrawn from the jury.  The jury found the fact of actual negligence.

The second question is of importance, and in view of our own case of Pennsylvania Railroad Co. v. Kerr, 12 P. F. Smith 353, requires a careful examination.  After the mail train passed, fire was immediately discovered in one of the cross-ties of the track, which was communicated directly to the grass adjoining, and running into a small heap of dry grass that had been cut and pulled and thrown into a pile, in the fall before, was carried thence by means of rubbish and dry grass on the company's ground, across the roadway to the fence, which was fired, and thence across two grass fields, burning the dry grass in its pathway, until it reached the plaintiff's fence and woodland, about six hundred feet from the railroad, burning the fence and a large part of the woods.  The weather was dry and windy, and the direction of the wind was strongly toward the plaintiff's fields and woods.

It is contended that the defendants are not liable for the injury to the plaintiff's fence and woods, on the ground that the injury was too remote from the original cause; and The Pennsylvania Railroad Company v. Kerr is cited as authority for this.  We agree with the court below that the question of proximity was one of fact peculiarly for the jury.  How near or remote each fact is to its next succeeding fact in the concatenation of circumstances from the prime cause to the end of the succession of facts, which is immediately linked to the injury, necessarily must be determined by the jury.  These facts or circumstances constitute the case, and depend upon the evidence.  The jury must determine, therefore, whether the facts constitute a continuous succession of events, so linked together, that they become a natural whole, or whether the chain of events is so broken, that they become independent, and the final result cannot be said to be the natural and probable consequence of the primary cause—the negligence of the defendants.  The rule concerning involuntary negligence, as distinguished

[Pennsylvania Railroad Co. *v.* Hope.]

from wanton or intentional injury, is expressed in the maxim, *causa proxima non remota spectatur.* The rule is undisputed, but the difficulty lies in its application arising sometimes from the barrenness or uncertainty of the evidence, and sometimes from the intrinsic difficulty in the nature of the circumstances. In all or nearly all cases, the rule for determining what is a proximate cause is, that the injury must be the natural and probable consequence of the negligence, and that this might and ought to have been foreseen under the surrounding circumstances. These are the circumstances of the particular case, and from the nature of the thing must be referred to the jury. All the court can do is to aid the jury by pointing to the relations of the facts. The jury must determine whether the original cause, that is, the negligence, is, by continuous operation, so linked to each successive fact, as that all may be said to be one continuous operating succession of events, in which the first becomes naturally linked to the last, and to be its cause, and thus to be within the probable foresight of him whose negligence ran through the succession to the injury. In determining this relation, it is obvious we are not to be governed by abstractions, which, in theory only, cut off the succession. Abstractly each blade of grass or stalk of grain is distinct from every other; so one field may be separated from another by an ideal boundary, or a different ownership, or it may be by a real but combustible division line. But we cannot say that therefore the succession fails. It is at this point the province of the jury takes up the successive facts and ascertains whether they are naturally and probably related to each other by a continuous sequence, or are broken off or separated by a new and independent cause. The practical knowledge and common sense of the jury applied to the evidence steps in to determine whether the injury is the real proximate result of the negligence, or, by reason of intervening and independent causes must be regarded as too remote, and the result not within the probable foresight of the party whose negligence is alleged to have produced it. Applying to the facts of this case this practical every day sense, we cannot say that the verdict of the jury was not a well formed judgment. In a field of dry grass, such as is described, and in such a state of the weather, it is obvious that a fire communicated to it from the fence of the roadway, will pass from blade to blade, and stalk to stalk, until reaching a fence where old dried grass lies entangled among the rails; the fence, instead of being a barrier, only adds fuel to the flames. Thus by a continuous succession, open and probable to every eye, a fire started by negligence on the roadway continues onward without cessation, and every blade, stalk and rail becomes a part of the concatenation leading to the result, however far it be from the starting point. Here may be noticed the material qualifications of the late Chief Justice THOMPSON, in his opinion in the

Railroad Co. v. Kerr, where he remarks, that there may be cases in which the causes of disaster, though seeming removed from the original cause, are still incapable of distinct separation from it; and where he adds, that the maxim *causa proxima non remota spectatur* is not controlled by *time* and *distance, but by the succession of events.* Had this case been presented to his mind, I doubt not he would have contrasted it broadly with that of Railroad Co. v. Kerr.

These remarks are perhaps sufficient to place this case on a basis of principle. It is also sustained by precedents. The following may be cited as distinctly and clearly on the point: Kellogg v. Chicago & Northwestern Railway Co., 26 Wis. 224; Clement v. Hannibal & St. Jo. Railroad Co., 12 Mo. 366; Webb v. Rome, Watertown & O. Railroad Co., 49 N. Y. 421, Perly v. Eastern Railroad Co., 98 Mass. 415; Vaughan v. Taff Vale Railway Co., 3 Hurlst. & N. 73. The principles announced in Tent v. Toledo, Peoria & Warsaw Railway Co., 59 Ill. 349, tend in the same direction; but it is a case more clearly allied in its facts to Penna. Railroad Co. v. Kerr, *supra*, which it criticises with some acerbity, and an imperfect understanding of the case, and with a little confusion of thought. It was not held in Railroad v. Kerr, that when a second building is fired from the first, set on fire through negligence, it is a mere conclusion of law that the railroad company is not answerable to the owner of the second (59 Ill. 362); or that if a fire is communicated from the locomotive to the field of A., and spreads through his field to the adjoining field of B., A. may be reimbursed by the company, while B. must set down his loss to a remote cause, and suffer in silence (Id. 358).

The determination of the writer of the opinion to cling to the ancient doctrine, that the *wanton wrongdoer* must take the consequences of his acts, whether measured by one or one hundred thousand dollars, perhaps is forcible. But as *wanton* injury was no characteristic of the case of .Railroad v. Kerr, his conclusion is somewhat remote. It is quite possible some may not be shocked at the terrible and unforeseen consequences which follow a little act of unconscious negligence, as where a poor washerwoman boiling clothes set fire to the straw of an ice house, which in turn fired another building, and burnt on until the one-fourth of Pittsburg lay in ashes. The mind of Chief Justice THOMPSON was of a different cast, and it did revolt at following out the consequences of an unintentional, yet legally speaking, negligent act, to a ruin so gigantic. But let us examine the case of Railroad Co. v. Kerr, and it will be found to be free from much of the criticism expended upon it. The facts were undisputed, in the words of Judge Taylor, who tried the cause, were uncontroverted and incontrovertible, and the point made before him was that the plaintiff had no cause of action, for the reason that the alleged negligent burning was

not the natural and necessary result of the burning of the warehouse. It was contended "that where the act complained of was not voluntary or intentional, or one of affirmative illegality, but was simply the absence of proper care and caution, and not in itself the subject of criminal complaint, responsibility is not carried beyond the necessary and natural consequences of the act." When the case came into this court it was upon a reserved question to wit, "assuming that the warehouse was ignited by sparks from the engine, chargeable to the negligence of the defendants' servants, the plaintiff, whose property was burnt in another building, to which the fire was communicated from the warehouse, and not from the engine, has no cause of action, for the reason that the alleged negligent burning was not the natural and necessary result of the burning of the warehouse." Thus the proposition came up in a bald and naked form, of a fire merely communicated from one house to another, and not the natural and necessary result of the burning of the warehouse. This was really the very question which ought to have been submitted to the jury, instead of being reserved in this form. In this state of the case the opinion dealt with the reserved question as one of primary and secondary causes. What might have been its fate if it had been committed to the jury to determine whether the communication of the fire from one building to the other was a natural and probable consequence of the firing of the first, it may not now be easy to say. Yet, as the case was placed before the mind of Chief Justice THOMPSON, there is no reason to doubt the correctness of his conclusion. From the very essence of the thing, the natural probability of a consequence, which ought to have been seen, is a matter of fact to be determined upon the evidence. Every case must depend upon its own circumstances: Kellogg *v.* Chicago & N. W. Railway Co., *supra*, is a case nearly on all fours with this. There Chief Justice Dixon, in a well-considered opinion, reaches the same conclusion, and fairly and in a proper spirit distinguishes Railway Co: *v.* Kerr from the one he was discussing, remarking that the facts so entirely distinguish it that it seems hardly necessary to comment upon it. That in the former the point was, that the burnings were distinct and separate, a series of events succeeding one another; while in that before him there was but one burning, one continuous conflagration from the time the fire was set on the railroad until the plaintiff's property was destroyed. So it was here, the fire burning onward in direct and continuous succession, until it reached the woodland of the plaintiff.

Upon the whole case the conclusion seems to be with the plaintiff below, and the judgment should be affirmed.