Craven v. Braun.

### Thomas Craven v. Emma Braun.

1. NEGLIGENCE—*Liability for, is Only for Probable Results of.* —An injury that is the natural and probable consequence of an act of negligence is actionable. But an injury that could not have been foreseen or reasonably anticipated as the probable result of the negligence is not actionable.

2. SAME—*An Injury Held Not to be a Natural or Probable Result of.*— The court discusses the evidence and holds, that the excited manner, loud talk, gestures or threats of the plaintiff in error, directed against the property of a third person, were not naturally or reasonably calculated to produce the injury sustained by the defendant in error, and that no injury therefrom could have been reasonably anticipated by plaintiff in error.

Trespass on the Case, for negligence. Error to the Superior Court of Cook County; the Hon. JAMES GOGGIN, Judge, presiding. Heard in this court at the October term, 1897. Reversed. Opinion filed January 17, 1898.

Smith, Gilbert & Kreidler, attorneys for the plaintiff in error.

Wing, Chadburne & Leach, Heckman & Carnahan, and Prentiss, Hall & Gregg, attorneys for defendant in error.

Mr. Justice Sears delivered the opinion of the Court.

This writ of error is prosecuted to review a judgment of the Superior Court in an action on the case for negligence.

The plaintiff there, defendant in error here, lived with a sister, who was a tenant of plaintiff in error. Plaintiff in error went to the house to collect rent. His conduct, actions and language, while there, are alleged as having been negligent, and as causing injury to defendant in error by fright and mental shock, which resulted in serious physical impairment.

The actions and language of plaintiff in error which are the basis of the suit, are, as given by defendant in error and her witnesses, substantially as follows:

At the time plaintiff in error entered the house, his tenant, the sister of defendant in error, was moving out her household goods. Defendant in error, Mrs. Braun, testified: "I was up stairs in my bedroom, sitting on the floor. Something made be look up, and Mr. Craven (plaintiff in error) waved his arms and shouted. He seemed so big—I was flat on the floor. He said, 'What are you doing here? I forbid you moving. If you attempt to move, I will have the constable here in five minutes. I refuse to take possession of these premises.' I was so frightened. I was paralyzed with fear. I could not speak nor move."

The brother of plaintiff (defendant in error) testified: "I remember the day that we moved from Benson

avenue down to Clark and Halsted street. I saw the defendant at our home on that day. When I first saw him he was standing just inside of the bedroom door where my sister, Mrs. Braun, was, on the second floor. That bedroom was the northwest room. I heard him before I saw him. I heard him say, 'Here, what are you doing; don't you move; I refuse to take possession of these premises; I will have an officer here in five minutes to stop these goods.' These words were spoken in a very loud, angry tone of voice. The first part, 'Here, what are you doing, don't you move,' I was just out of sight in the end of the hall, and then I came toward him to see what was the matter, not knowing what it was, and the rest of it I heard as he stood over her; she was sitting on the floor. As he was speaking these words he was swinging his arms and gesticulating very wildly. On hearing those words uttered by the defendant, I hurried to the front end of the hall, and saw him standing in the door. I went clear up to him. He was standing very close to my sister, clear up to her, right by her side. She was sitting flat on the floor. He was close enough to have touched her with his hands, if he had so desired to; I should say close up to her; not six inches from her. Upon my going up there to where the defendant was, I said, 'Here, what is the trouble here? What do you want? He turned to me and said, 'I refuse to take possession of these premises; I will have an officer here in five minutes to stop these goods.' When he said those words he was still close by my sister. I tried to stop him and said, 'What is the matter?' and he turned around and went down stairs as hard as he could go. He had a long, dark, or black, very dark ulster, or storm-coat ulster, I should say, and a black slouch hat, pair of overshoes or rubbers, or something of that sort. I did not hear him approach my sister's room or go up those stairs."

An expressman, Steen, testified: "He (plaintiff in error) told me to stop loading the goods; opened the middle door and walked very fast right up stairs; did not ring the bell; he wore rubbers and made no noise going up; he went into room where plaintiff (Mrs. Braun) was, and said, 'What are you doing here? I will have an officer here to stop these goods;' spoke at the top of his voice; he was angry; he stood in doorway when he did this; plaintiff was on her knees packing; her brother came in room and asked what was the matter; and defendant threw up his hands two or three times and then went down stairs."

Another expressman, Schell, testified that he heard a little loud talking up stairs, so loud that a man could hear it down on the first floor.

No other witness for the plaintiff in trial court testified to the occurrences.

It can not be maintained that for these actions of the plaintiff in error a recovery could be had in this case as for trespass either *quaere clausum fregit* or to the person of defendant in error.

There is neither allegation nor proof which would show a trespass as by breaking into the dwelling of defendant in error. Not Mrs. Braun, but her sister, was in possession of the premises, and the right of entry to collect rent would warrant the going into the house by plaintiff in error under the circumstances disclosed.

Neither can trespass to the person be maintained as the basis of this recovery upon the pleadings and evidence. It is suggested in the argument, that a trespass to the person may be committed by violent gestures and language without impact upon the person. If this were conceded, yet would there be no theory of such a trespass maintainable here, for neither the gestures nor the language of the plaintiff in error were directed toward the defendant in error, so as to consti-

tute a threatened assault upon her.    Whatever threat
of violence might be, imputed to language or action,
was directed to the property of his tenant, the sister of
defendant in error.

The only possible ground of action which could ac-
crue to defendant in error from these facts, would be
for negligence of plaintiff in error in so speaking and
acting in her presence as to cause her injury.    The
declaration is framed upon this theory; each count
declares for negligence.    We have then to inquire:
First, whether the acts and language of the plaintiff in
error, as disclosed by the evidence most favorable to
defendant in error, are such as can be held to consti-
tute negligence; and, second, whether the injury sus-
tained by defendant in error was such as, according to
common experience, might reasonably be anticipated
to result from such actions and language.    An answer
to the one question is, in effect, an answer to the other,
and, as we view the case, neither answer can be favor-
able to a right of recovery here.    If the acts and lan-
guage of plaintiff in error could not be expected in the
ordinary course of things to work harm to a bystander,
not the owner of the property toward which his threats
were directed, then such acts and language do not con-
stitute negligence toward such bystander, nor would
an extraordinary injury, not reasonably to be expected,
though resulting therefrom, be ground for an action.
Fent v. Toledo, P. & W. R. R. Co., 59 Ill. 349; Hoad-
ley v. North Tr. Co., 115 Mass. 304; Derry v. Fletner,
118 Mass. 131; Hoag v. Lake Shore & M. S. R. R.
Co., 85 Pa. St. 293; Chicago, St. P., M. & O. R. R. v.
Elliott, 55 Fed. Rep. 950.

In Fent v. Toledo, P. & W. R. R. Co., *supra*, the
court say, quoting from Mr. Parsons: " 'It is, that
every defendant shall be held liable for all of those con-
sequences which might have been foreseen and expected

as the results of his conduct, but not for those which he could not have foreseen, and was therefore under no moral obligation to take into consideration,' " and the court continue: "We are disposed to regard this explanation of the rule as clearer, and capable of more precise application than any other we have met with in our examination of this subject, and it is in substantial accord with what is said by Pollock, C. B., in Highby v. Hewett, 5 Exch. 240."

In Derry v. Fletner, *supra*, the Massachusetts court say: "The true inquiry is whether the injury sustained was such as, according to common experience and the usual course of events, might reasonably be anticipated."

In Hoag v. L. S. & M. S. R. R., *supra*, the Pennsylvania court say: "In determining what is proximate cause, the true rule is, that the injury must be the natural and probable consequence of the negligence, such a consequence as, under the surrounding circumstances of the case, might and ought to have been foreseen by the wrongdoer as likely to flow from his act."

In C., St. P. M. & O. R. R. v. Elliott, *supra*, the court say: "An injury that is the natural and probable consequence of an act of negligence is actionable. But an injury that could not have been foreseen or reasonably anticipated as the probable result of the negligence, is not actionable."

There is much contention by counsel in their briefs as to liability for fright and mental anguish caused by negligence, when no impact occurs. Whether such mental shock or fright, resulting in physical injury, though not caused by any impact upon the person, is ground for action when caused by negligence, is a matter not necessary to be decided in order to dispose of this case. For whatever cases there may be holding that such liability may exist, there is no one of

them which holds that it could be a liability for other than the natural and reasonable consequences of the acts complained of as negligent.

The case largely relied upon by counsel for defendant in error is Bell v. Great Northern R'y Co., 26 L. R. Ire. 432. The instruction there offered was as follows:

"That if great fright was, in their opinion, a reasonable and natural consequence of the circumstances in which the defendant had placed Mary Bell, and she was actually put in great fright by these circumstances, and if injury to her health was, in their opinion, a reasonable and natural consequence of such great fright, and was actually occasioned thereby, damages for such injury would not be too remote, and might be given for them if they found for the plaintiff."

If applied to the facts here, how could it be said that the fright and shock of defendant in error were a reasonable and natural consequence of the circumstances in which she was placed; or, that injury to her health was a reasonable and natural consequence of such fright and shock as would be likely to follow such circumstances, and could be anticipated therefrom?

Mr. Beaven, who, in his text upon the case of Victorian R. R. Comrs. v. Couttas, L. R. 13 App. Cas., 222, very vehemently attacks that case, and asserts, that decision to the contrary notwithstanding, the right to recover for fright and mental shock alone when caused by negligence, yet qualifies the right thus: "As sufficient safeguard against imposition seems to be the bearing steadily in view the elementary rule that before a plaintiff can recover, he must show a damage naturally and reasonably arising from the negligent act."

Counsel for defendant in error urge that one who does a careless or mischievous act is liable for conse-

quences whether he intends them or not. And cite in support Vandenburgh v. Truax, 4 Denio, 465.

If that decision is examined, it will be found to assert, as a qualification of the right of recovery, that the consequences which are made the basis of action must be such as naturally result from the conduct. The court say: "It may be laid down as a general rule, that when one does an illegal or mischievous act which is likely to prove injurious to others, and when he does a legal act in such a careless and improper manner that injury to third persons may probably ensue, he is answerable for all the consequences which may directly and naturally result from his conduct, and in many cases he is answerable criminally as well as civilly. It is not necessary that he should intend to do the particular injury which follows."

And from the same decision it may be seen that the liability which results from the careless or improper manner of doing a legal act, is based upon the fact of the negligent act being such as to make it probable that injury to others will ensue.

Considering only the evidence most favorable to defendant in error, how can it be said that the excited manner, loud talk, gestures or threats, directed against the property of her sister, were naturally and reasonably calculated to produce the injury sustained by the defendant in error; or that any injury therefrom could have been reasonably anticipated by plaintiff in error? Upon the proposition that it could not, we think reasonable minds could not differ.

Plaintiff in error does not appear to have had any knowledge of the nervous condition of defendant in error. To hold him liable would in reason necessitate holding that any person who spoke or acted in moments of excitement, might be mulcted in damages for any extraordinary injury occasioned thereby to a passerby,

whose peculiar sensibility made slight causes productive of serious results.

If plaintiff in error were a trespasser upon these premises, a different question would be presented. But neither the allegations of the declaration, nor the evidence, warrant us in viewing him other than as a landlord lawfully upon the premises to collect rent.

Treating the case, as the defendant in error by her declaration treats it, as an action for negligence only, we can see no right of recovery.

The judgment is reversed.