## Western Stone Co. v. Frederick O. Earnshaw.

1. LIMITATIONS—*As a Defense to an Amended or Additional Count.*
—To an amended or additional count, filed subsequently to the commencement of the suit, which is merely a re-statement of the cause of action set up in the original declaration, the statute of limitations does not present a defense.

2. RECOVERY—*For Damages Not Reasonably to be Anticipated.*—
For a result so unusual and extraordinary as the heat in an engine shed of a manufacturing company, from the lack of ventilation in such shed, when constructed in the usual manner, the company can not be held liable.

**Trespass on the Case,** for personal injuries. Appeal from the Circuit Court of Cook County; the Hon. EDWARD F. DUNNE, Judge, presiding. Heard in this court at the March term, 1901. Reversed. Opinion filed December 12, 1901.

**Statement.**—Appellee brought this action to recover damages for personal injury sustained by him while in the employ of appellant, and caused, it is alleged, through the negligence of appellant. The particular negligence which it is sought to establish as the ground of the action is a failure of appellant to place a sufficient number of openings as windows of a building in which appellee was obliged to work while operating an engine for appellant. The building in question was a wooden shed, twelve by eighteen feet in dimensions, situated upon the edge of a stone quarry, in which shed there was an engine used to operate a hoisting derrick. This house or shed was built of wood, the sides being boards nailed straight up and down. The floor was two and one-half feet above the ground and about seven feet below the eaves inside. From the floor to the apex of the roof the distance was about eleven feet. The openings in this building consisted of two doors, one on the east side and one on the south side, and four windows, two on the north side, one on the east side and one on the south side. The two doors were each two feet and four inches by six feet and four inches in dimensions. The window on the east side of the building was three feet by five

feet and eight inches.  The window in the south side was two feet and five inches by three feet.  The two windows in the north side were each two feet nine inches by two feet ten inches.  The window on the east side was located so that its longer side was parallel with the floor, and the bottom of it about four feet and six inches above the floor.  Appellee, who was the engineer in charge of the engine in this building, stood upon a platform about twenty-one inches above the floor and several feet from the boiler of the engine.  A brother of appellee was employed as superintendent of appellant's works.  To him appellee presented a request that there be additional ventilators put in the building, and appellee testified that his brother said that he would do it in a day or so.  The time of this promise is fixed by the testimony as two or three days before the injury in question.  The superintendent, appellee's brother, was not called as a witness by either litigant.

At the time of the injury the weather was unusually hot. Appellee testified:

" I begun work there the 23d of March (1895).  The weather was rather cool when I started to work there. Along about the 25th of June the weather got intensely hot, and I got a pail of water in there and used to have my handkerchief in it and wring it out to wash my face and wash the perspiration out of my eyes.  I did that, for I couldn't see; the perspiration ran into my eyes and smarted so.  I couldn't see the derrick outside.  *  *  *  It was the hottest weather I ever experienced.  *  *  *  I asked the superintendent to put some ventilators in the building. I asked him to put a window up near the eaves so as I could get some of the west breeze, and also to put another opening on the outside of the building east of where the boiler stood, so that what breeze blew through from the south would blow on me, and would not blow more hot air over to me, and he said he would do that.  The carpenter was busy, but he said that he would do it in a day or so."

On the 28th of June, 1895, while appellee was engaged in his work as engineer in the engine shed, he was overcome by heat, fell, and was severely injured by the fall, and probably also by coming in contact with some of the mov-

ing machinery or belting. One of appellee's arms is permanently crippled as a result of the injury.

The evidence discloses that upon the day of the injury the wind was from the northeast.

The original *narr.* set up as ground of action negligence of appellant in failing to furnish to its employe, appellee, suitable and safe place in which to-perform his work.

On January 15, 1900, which was more than two years after the injury, appellee filed an amended or additional count, setting up the same negligence as that alleged by the original *narr.*, and in addition an allegation of complaint by appellee as to the insufficient and unsafe ventilation and a promise by representative of appellant to provide ventilation and a failure to comply with the promise.

The statute of limitations was pleaded to this additional count. A demurrer thereto by the appellee was sustained by the court.

The issues were submitted to a jury, and a verdict was returned finding the appellant guilty, and assessing appellee's damages at $10,000. From judgment upon this verdict this appeal is prosecuted.

F. J. CANTY and A. B. MELVILLE, attorneys for appellant; J. C. M. CLOW, of counsel.

PHELPS & CLELAND, attorneys for appellee.

MR. JUSTICE SEARS delivered the opinion of the court.

We are of the opinion that the learned trial court properly sustained the demurrer of appellee to the plea of the statute of limitations which was interposed to the additional count of the declaration.

The gist of the negligence set up as a ground of action was the same in the additional count as in the original declaration. The addition in the former of an allegation of complaint by appellee and promise to repair by appellant, did not present a new cause of action. The additional count was merely a re-statement of the cause of action set up by the original declaration. Therefore the statute of lim-

Western Stone Co. v. Earnshaw.

itations did not present a defense and the demurrer to it was properly sustained. Pardridge v. Gilbridge, 98 Ill. App. 134.

The important and controlling question presented upon this appeal is as to a right of recovery upon the facts disclosed by the evidence. The appellant contends that the evidence shows no actionable negligence. We are of opinion that this contention is sound. The facts as established are that upon an extremely hot day the appellee was overcome by the heat. Doubtless the jury might infer from the evidence that this heated condition of the air in the engine shed was due partly to the heat generated by the boiler furnace and partly to the heat of the outside atmosphere. The jury were also warranted in finding from the evidence that the superintendent of appellant had promised appellee a day or two before the injury that additional ventilation should be provided in the engine shed within a day or so. But all these facts and inferences therefrom fall short of establishing a valid ground of action. There is still an essential element lacking, viz., a defective condition in the engine shed which was permitted through negligence of appellant, and which operated as a proximate cause of the injury. There is no evidence whatever which would warrant a conclusion that the engine shed was not ordinarily safe for use by the engineer. Neither appellee nor appellant are shown to have even considered a danger as arising from the condition of the house. It is true that appellee asked for more openings to provide further ventilation, but that this was merely for comfort and convenience is as inferable as that it was to obviate an existing peril. There was no suggestion of a complaint or a notice of danger in the request made by appellee for additional openings—nothing from which the employer might learn that his employe was exposed to peril by reason of a lack of sufficient openings. It was merely a request—neither a complaint nor a notice.

There were two doors and four windows in the shed, furnishing a considerable amount of opening for a building

twelve by eighteen feet in dimensions. The additional openings suggested by appellee in his request to his brother, were for the west and south sides of the building, so that appellee "could get some of the west breeze and so what breeze blew through from the south would blow on him and would not blow on the boiler and blow more hot air over to him." The wind, upon the day when the injury occurred, was in the northeast. Juries are not confined to the facts directly established by the evidence, but may also make inferences, fairly deducible from facts directly established, a basis of their verdict. But there must be some foundation of fact from which such inference can be fairly drawn. Here there is absolutely no ground for inferring that either appellee's or appellant's representatives regarded the shed as being in any degree dangerous as a place to work. Nor is there any evidence which, in our opinion, warranted a jury in concluding that the shed was in fact dangerous. Hence there can be no conclusion that appellant was lacking in ordinary care in this regard.

That there could be any danger to any one employed in the engine shed from lack of ventilation, as the shed was constructed, could not, we think, be anticipated. For a result so unusual and extraordinary as not reasonably to be anticipated, the appellant can not be held liable. Fent v. T. P. & W. Ry. Co., 59 Ill. 349; Craven v. Braun, 73 Ill. App. 189; Braun v. Craven, 175 Ill. 401.

In the Fent case, *supra*, the court said, speaking of liability for negligence:

"Every defendant shall be held liable for all of those consequences which might have been foreseen and expected as the results of his conduct, but not for those which he could not have foreseen, and was therefore under no moral obligation to take into consideration."

The promise to add openings for more ventilation does not aid appellee's case, for the promise was not shown to have been made to obviate a danger or in view of any danger known to either appellant or appellee. The time within which the additional openings were to be made, as promised by appellee's brother, had scarcely elapsed, and it is appar-

ent from the evidence that had they been made they would upon this day have afforded none of the additional westerly or southerly breezes, to obtain the benefit of which they were intended, for upon that day the wind was from another quarter. Appellee, while attending to his duties, was stationed in the northeast part of the building. He testified:

"This platform I stood on was about three or four feet from the east end of the building and a little bit to the north side. It was nearer the north side than the south side. The north side of the building was already furnished with two windows, each two feet nine inches by two feet ten inches; and the east side of the building was provided with a door two feet four inches by six feet four inches, and a window three feet by five feet eight inches."

There is no suggestion in the evidence and no ground for inference that these four openings in a building twelve by eighteen feet in dimensions, were inadequate to give appellee the benefit of all the breeze which came from the northeast, and upon that day there was no other breeze. No additional openings were requested by appellee upon the north or east.

Appellee suffered what is commonly called a "heat stroke," or prostration from heat, which, so far as the evidence discloses, was caused by uncommonly hot weather, and was in no manner caused by any lack of ordinary care upon the part of his employer. The mere relationship of employer can not of itself be made a ground for imposing the burden of appellee's misfortune upon appellant.

The judgment is reversed.